David Yerushalmi, Esq. (Cal. St. Bar No. 132011)
**AMERICAN FREEDOM LAW CENTER**
2020 Pennsylvania Ave NW, Suite 189
Washington, D.C. 20006
Tel: (646) 262-0500; Fax: (801) 760-3901
dyerushalmi@aflc.us

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ADOM RATNER-STAUBER, | Civil Action No. 2:24-CV-7043 |
| Plaintiff, | **VERIFIED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT, | |
| Defendants. | |

Plaintiff Adom Ratner-Stauber, individually and on behalf of all other persons similarly situated, by and through undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following based upon his own personal knowledge as to himself and his own acts, together with information and belief as to all other matters, which in turn are based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of public reporting and other public documents.

## INTRODUCTION

1.    Defendants City of Los Angeles ("City") and Los Angeles Police Department ("LAPD") (collectively referred to herein as "Defendants") have, through an illegal and abject failure to enforce laws, created a dangerous situation for Plaintiff and those similarly situated.

2.    Los Angeles has the largest homeless population in the United States (https://usafacts.org/articles/which-cities-in-the-us-have-the-most-homelessness/#:~:text=In%202022%2C%20Los%20Angeles%20had,Urban%20Development%20(HUD)%20data)—a population that is growing drastically year after year, (https://www.lahsa.org/news?article=927-lahsa-releases-results-of-2023-greater-los-angeles-homeless-count#:~:text=LOS%20ANGELES%20%E2%80%93%20The%202023%20Greater,to%20an%20estimated%2046%2C260%20people). In 2023, Los Angeles County has an estimated 75,518 homeless people on any given night, with 46,260 in the City of Los Angeles. *Id.*

3.    These homeless people form encampments, ignored by Defendants, creating third-world conditions surrounding and on Plaintiff's and similarly situated person's property.

4.    These homeless individuals are allowed free access to enter private property, including Plaintiff's and the property of those similarly situated, and bring with

them trash, filth, and other junk.

5.     Plaintiff and those similarly situated face physical and verbal assaults, fires, urination, defecation, nudity, public sex acts, solicitation, prostitution, open drug use, discarded intravenous needles (*i.e.*, biohazards often contaminated with communicable diseases including HIV), tents, trash heaps, and more along the public access to their property and intruding onto their property. Essentially, Defendants have created lawless zones that Plaintiff and those similarly situated must traverse in order to access their property. These zones completely and/or substantially block access to the property.

6.     This gauntlet of filth, disease, unencumbered crime, and other dangers has rendered Plaintiff and those similarly situated with an inability to safely access their property or safely enjoy their property. In essence, through its disregard for the law and refusal to enforce the law at and around Plaintiff's property and the property of those similarly situated, Defendants have materially and substantially impaired the access of Plaintiff and those similarly situated to their property.

7.     As the Supreme Court noted, the right to exclude the public from private property is "very obvious . . . . [The Court has] repeatedly held that, as to property reserved by its owner for private use, the right to exclude others is one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Nollan v. Cal. Coastal Com*, 483 U.S. 825, 831, 107 S. Ct. 3141, 3145 (1987) (internal alterations and quotation marks omitted).

8.     Despite this right, Defendants allow the public to freely intrude on Plaintiff's property and the property of those similarly situated.

9.     Plaintiff seeks a declaration that the homeless encampments, both those which are on City land and are owned and operated by the City, and those that encroach upon Plaintiff's property and the property of those similarly situated, constitute a public and private nuisance; that Defendants have violated the Fifth and Fourteenth Amendments to the United States Constitution; a permanent injunction ordering Defendants to enforce all applicable laws in a way to abate the nuisance; compensation for the taking of Plaintiff's property; and attorneys' fees as allowed by law.

### JURISDICTION AND VENUE

10.     This action arises under the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the Constitution and laws of the State of California.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367(a).

11.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

12.     On June 20, 2024, prior to filing this suit, Plaintiff filed a notice of Plaintiff's claims raised in this complaint with the City, which the City rejected by

written notice on July 25, 2024.

13.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

## PARTIES

14.    Plaintiff is a United States citizen, resident, and business owner in the City of Los Angeles.

15.    Plaintiff built his businesses into a thriving part of his Los Angeles community.

16.    Plaintiff owns residential, commercial, and industrial properties throughout the City.

17.    Defendant City of Los Angeles is a municipal entity existing under the laws of the State of California with the capacity to sue and be sued.

18.    The City and its officials are responsible for creating, adopting, approving, ratifying, and enforcing the policies, practices, customs, and/or procedures of the City, including those challenged in this Complaint.

19.    The City's policies, practices, customs, and/or procedures were the moving force behind the constitutional violations set forth in this Complaint.

20.    Defendant LAPD was and is a department and agency of Defendant the City of Los Angeles, acting within its jurisdiction and under its control.

**FACTUAL ALLEGATIONS**

21.    The Los Angeles Municipal Code, California Civil Code, and other applicable laws have provisions to protect the health and safety of Los Angeles residents making things such as drug use, public urination and defecation, prostitution, assault, solicitation, open fires, obstructing the right of way, and other health and safety dangers on the public right of way to access Plaintiff's property illegal. Despite these and other laws designed to protect the health and safety of its constituents, Defendants have a policy to not enforce these and other laws in certain areas of the City, neglecting their duties to the property owners in Los Angeles.

22.    Instead, Defendants have abandoned Plaintiff and those other Los Angeles residents similarly situated to instead favor areas of Los Angeles that attract more out-of-town travelers and guests to the City. For instance, Defendants cleared homeless encampments around Sofi Stadium before the recent 2022 Super Bowl because it created a "safety issue" for visitors. Yet, Defendants show no regard for the safety issue that Plaintiff and those similarly situated must traverse daily to access their property.

**12400 Montague Street, 10029 Bradley Avenue, and 10051 Bradley Avenue**

23.    Plaintiff Ratner-Stauber has an ownership interest in 12400 Montague, 10029 Bradley Avenue, and 10051 Bradley Avenue, located in the City of Los Angeles. These three addresses share a property lot (hereinafter "Montague-Bradely Lot").

24.    Plaintiff Ratner-Stauber has an ownership interest in the Montague-Bradely

Lot which is owned by Montague, Joint Venture, because he has a 1/3 share of Ratner Trust which owns 50% of Northeast Valley, which in turn owns 40% of Montague, Joint Venture.

25.    The Montague-Bradely Lot is an approximately 100,000 sq foot industrial property with three tenants in the entertainment and construction industries. This property has tenants, employees, guests, and invitees that ingress and egress this property throughout the day.

26.    In addition to his ownership, Plaintiff also manages the property at the Montague-Bradely Lot. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

27.    The Montague-Bradely Lot has ongoing problems with homeless individuals and encampments, which Defendants ignore.

28.    Defendants allow homeless individuals with motor homes, tents, garbage, and other items constantly to impair, and frequently to completely block, the free flow of vehicular and pedestrian traffic to the property.

29.    Defendants allow homeless individuals with their encampments, motor homes, trash and other items to predominately, and at times entirely, block access to the property.

30.     Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property. For example, a homeless individual made an encampment that intruded on this property and Defendants would not remove the trespasser, allowing this homeless member of the public free access to Plaintiff's private property.

31.     Defendants also allow homeless individuals to break into Plaintiff's property at night to destroy the property and dump trash and other filth on Plaintiff's private property. The homeless individuals also have started fires on the Montague-Bradely Lot.

32.     Defendants allow homeless individuals to steal water and electricity from these properties. Plaintiff lost a tenant at the Montague-Bradely Lot specifically because Defendants allow the homeless to steal utilities from the property.

33.     Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

34.     This diminishes the value of the property and decreases the income derived from the property as Plaintiff has to offer reduced rents and struggles to gain or retain tenants.

35.     Further, Plaintiff has been forced to expend considerable funds in an

attempt to curb the effects of Defendants' failure by adding fencing, gates, and panels to the Montague-Bradely Lot.

**8106-8040 San Fernando Road, 80135 Clybourn Avenue, 10671 Lorne Street, 10671 Lanark Street, and 10616 Lanark Street**

36.     Plaintiff Ratner-Stauber has an ownership interest in 8106-8040 San Fernando Road, 80135 Clybourn Avenue, 10671 Lorne Street, 10671 Lanark Street, and 10616 Lanark Street, four properties (8106-8040 San Fernando Road and 80135 Clybourn Avenue are multiple addresses for the same property) that are all adjacent to each other (hereinafter "Lanark Area Properties") and located in the City of Los Angeles.

37.     Plaintiff Ratner-Stauber has an ownership interest in 8106-8040 San Fernando Road and 80135 Clybourn Avenue, through his company MIP, LLC in which he owns 5% personally, 20% through his 1/3 interest in Ratner Trust, and 20% through Ratner Trust's 50% share of Northeast Valley.

38.     8106-8040 San Fernando Road and 80135 Clybourn Avenue constitute an approximately 120,000 square foot industrial park with about twenty tenants.

39.     In addition to his ownership, Plaintiff also manages the property at 8106-8040 San Fernando Road and 80135 Clybourn Avenue. As the property manager of these properties, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

40.     Plaintiff Ratner-Stauber has an ownership interest in 10671 Lorne Street

and 10671 Lanark Street through Northeast Valley, LP because he controls 1/3 of Ratner Trust which owns 50% of Northeast Valley, LP.

41.    10671 Lorne Street is a 60,000 square foot industrial property with one tenant.

42.    In addition to his ownership, Plaintiff also manages the property at 10671 Lorne Street. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

43.    10671 Lanark Street is an approximately 120,000 square foot industrial property with one tenant.

44.    In addition to his ownership, Plaintiff also manages the property at 10671 Lanark Street. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

45.    Plaintiff Ratner-Stauber has an ownership interest in 10616 Lanark Street through Northeast Valley, LP because he controls 1/3 of Ratner Trust which owns 50% of Northeast Valley, LP, which owns two-thirds of 10616 Lanark Street. Additionally, the company Idarose Corp owns 1/3 of 10616 Lanark Street, and Plaintiff owns 9.04%

of Idarose Corp.

46.    10616 Lanark Street is an approximately 46,000 square foot industrial property with one tenant.

47.    In addition to his ownership, Plaintiff also manages the property at 10616 Lanark Street. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

48.    The Lanark Area Properties have tenants, employees, guests, and invitees that ingress and egress the properties throughout the day.

49.    Defendants allow homeless individuals with motor homes, tents, garbage, and other items constantly to impair, and frequently to completely block, the free flow of vehicular and pedestrian traffic to the property.

50.    Defendants allow homeless individuals with their encampments, motor homes, trash and other items predominately, and at times entirely, to block access to the property.

51.    Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property.

52.    Defendants also allow homeless individuals to break into Plaintiff's property at night to destroy the property and dump trash and other filth on Plaintiff's

private property.

53.    Defendants allow homeless individuals to steal water and electricity from these properties and the City's poles supplying electricity to these properties. One such theft of electricity caused a motor home to catch on fire, which then spread to Plaintiff's property and burned down a tree.

54.    Plaintiff had a tenant downsize at the Lanark Area Properties because the access and safety issues created by Defendants prohibited the tenant from bringing its clients to the property.

55.    Plaintiff had to expend considerable funds to build blockades to prevent sewage and other filth from flowing into 10671 Lanark during rainstorms from the nearby homeless encampments.

56.    Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

57.    This diminishes the value of the property and decreases the income derived from the property as Plaintiff has to offer reduced rents and struggles to gain or retain tenants.

**10932-10964 Ventura Boulevard**

58.    Plaintiff Ratner-Stauber owns 11.5% of 10932-10964 Ventura Boulevard,

located in the City of Los Angeles, through the company VLS.

59.    10932-10964 Ventura Boulevard is an approximately 30,000 square foot commercial office retail property with about fifteen tenants.

60.    In addition to his ownership, Plaintiff also manages the property at 10932-10964 Ventura Boulevard. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

61.    This property has tenants, employees, guests, and invitees that ingress and egress throughout the day.

62.    Defendants allow homeless individuals with tents, garbage, and other items constantly to impair, and frequently to completely block, the free flow of pedestrian traffic to the property.

63.    Defendants allow homeless individuals with their trash and other items predominately, and at times entirely, to block access to the property.

64.    Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property. Defendants allow homeless individuals to enter Plaintiff's property to defecate, graffiti, and dump trash and other items. This costs Plaintiff money to clean up.

65.    Defendants also allow the homeless—members of the public—to live on

Plaintiff's property.

66.    Defendants allow homeless individuals to steal water and electricity from these properties.

67.    Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

68.    This diminishes the value of the property and decreases the income derived from the property as Plaintiff has to offer reduced rents and struggles to gain or retain tenants.

**8141-8181 Sunland Boulevard**

69.    Plaintiff Ratner-Stauber has an ownership interest in 8141-8181 Sunland Boulevard, located in the City of Los Angeles, through the company Idarose Corp in which he owns 9.04%.

70.    8141-8181 Sunland Boulevard is a commercial retail property that has multiple tenants, including a 7-11 and a gas station.

71.    In addition to his ownership, Plaintiff also manages the property at 8141-8181 Sunland Boulevard. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses

relating to the aforementioned.

72.    This property has tenants, employees, guests, and invitees that ingress and egress the property throughout the day.

73.    Defendants allow homeless individuals with garbage and other items constantly to impair, and frequently to completely block, the free flow of pedestrian traffic to the property.

74.    Defendants allow homeless individuals with their trash and other items predominately, and at times entirely, to block access to the property.

75.    Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property. Defendants allow homeless individuals to enter Plaintiff's property to defecate, graffiti, and dump trash and other items. Plaintiff must expend substantial sums of money to deal with this damage to the property.

76.    Defendants also allow the homeless—members of the public—to live on Plaintiff's property, particularly in the trash enclosure.

77.    Defendants allow homeless individuals to steal water and electricity from these properties. Defendants also allow the homeless individuals to steal items from the property, including HVAC parts from the roof.

78.    Defendants' actions in regard to allowing the homeless to run rampant and damage this property has caused Plaintiff's tenant, the 7-11, to close for two hours at night because it cannot operate with the intense rise in crime from the homeless that

Defendants allow. As a result of this deleterious impact on the property, the rent Plaintiff can obtain for this property is diminished.

79.     Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

80.     This diminishes the value of the property and decreases the income derived from the property as Plaintiff has to offer reduced rents and struggles to gain or retain tenants.

**740 South Broadway**

81.     740 South Broadway, located in the City of Los Angeles, is a commercial property.

82.     Plaintiff manages this property for the company 740 Broadway LLC. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

83.     This property has tenants, employees, guests, and invitees that ingress and egress throughout the day.

84.     Defendants allow homeless individuals with tents, garbage, and other items constantly to impair, and frequently to completely block, the free flow of pedestrian

traffic to the property.

85.     Defendants allow homeless individuals with their trash and other items predominately, and at times entirely, to block access to the property.

86.     Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property. Defendants allow homeless individuals to enter Plaintiff's property to defecate, graffiti, break windows and doors, and dump trash and other items. The homeless have even smeared their feces all over the building. Plaintiff must expend substantial sums to address these issues and in clean-up and they constitute a health hazard.

87.     Defendants also allow the homeless—members of the public—to live on Plaintiff's property.

88.     Defendants allow homeless individuals to steal water and electricity from this property. Defendants also allow the homeless individuals to steal items from the property.

89.     Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

90.     This diminishes the value of the property and decreases the income derived from the property as Plaintiff has to offer reduced rents and struggles to gain or retain

tenants.

**8101-8109 San Fernando Road**

91.    Plaintiff Ratner-Stauber has an ownership interest in 8101-8109 San Fernando Road, located in the City of Los Angeles, through the company Idarose Corp in which he owns 9.04%.

92.    8101-8109 San Fernando Road is zoned as a residential property but is currently a vacant lot.

93.    This property had/will have tenants, employees, guests, and invitees that ingress and egress throughout the day.

94.    In addition to his ownership, Plaintiff also manages the property at 8101-8109 San Fernando Road. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

95.    8101-8109 San Fernando Road used to have a residential building on it.

96.    This property was broken into daily and Defendants would not stop trespassers, giving the public access to Plaintiff's private property. These individuals, allowed access by Defendants, stole from the property, including plumbing, electrical, and other items.

97.    Plaintiff boarded up the windows, costing Plaintiff thousands of dollars, in

an attempt to keep the property safe from the individuals who Defendants allowed to access the property while waiting for demolition permits and while he was deciding what to do with the property.

98.   This also caused thousands of dollars in damages to remove the homeless and board up and secure the property.

99.   This caused Plaintiff tens of thousands of dollars in damages and forced him to demolish the property earlier than planned to try to stem the theft.

100.   Once the structure was removed, Defendants allowed people to dump on the property and allowed the public to access this property. Defendants allow homeless people to live on Plaintiff's private property.

101.   In particular, one homeless woman lives on the property and brings trash and other filth. Plaintiff has contacted Defendants numerous times in an attempt to keep this woman and other members of the public off his private property, but Defendants take no action.

102.   In one instance when Plaintiff contacted the LAPD in an attempt to get Defendants to keep the public off his private property, the woman threatened to use a machete if they attempted to remove her. LAPD officers allowed an armed and threatening woman on Plaintiff's private property and left the scene. This woman and others are still on Plaintiff's private property because Defendants allow it.

103.   Defendants allow homeless individuals with motor homes, tents, garbage,

and other items constantly to impair, and frequently to completely block, the free flow of vehicular and pedestrian traffic to the property.

104.   Defendants allow homeless individuals with their encampments, motor homes, trash and other items to predominately, and at times entirely, block access to the property.

105.   Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property.

106.   Defendants also allow homeless individuals to break into Plaintiff's property at night to destroy the property and dump trash and other filth on Plaintiff's private property.

107.   Defendants allow homeless individuals to steal water and electricity from these properties.

108.   Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

109.   This diminishes the value of the property and decreases the income derived from the property as Plaintiff had to demolish an income-producing building and delay redevelopment.

**10812-10832 White Street**

110.    Plaintiff Ratner-Stauber has an ownership interest in 10812-10832 White Street, located in the City of Los Angeles, through the company Idarose Corp in which he owns 9.04%.

111.    10812-10832 White Street is a residential property with eight duplexes. In total, there is approximately 10,000 square feet designed for sixteen, single-family units. This property is across from 8101-8109 San Fernando Road where the machete-wielding homeless woman has intruded on Plaintiff's property with Defendants' permission.

112.    In addition to his ownership, Plaintiff also manages the property at 10812-10832 White Street. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

113.    Defendants allow homeless individuals with motor homes, tents, garbage, and other items constantly to impair, and frequently to completely block, the free flow of vehicular and pedestrian traffic to the property.

114.    Defendants allow homeless individuals with their encampments, motor homes, trash and other items to predominately, and at times entirely, block access to the property.

115.    Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property.

116.   Defendants also allow homeless individuals to break into Plaintiff's property at night to destroy the property and dump trash and other filth on Plaintiff's private property.

117.   Defendants allow homeless individuals to steal water and electricity from these properties.

118.   Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

119.   This diminishes the value of the property and decreases the income derived from the property as Plaintiff had to demolish an income-producing building and delay redevelopment.

**10960 Ratner Street**

120.   Plaintiff Ratner-Stauber has an ownership interest in 10960 Ratner Street, located in the City of Los Angeles, through the company Idarose Corp in which he owns 9.04%.

121.   10960 Ratner Street is an approximately 100,000 sq foot, brand-new, nine-unit apartment building. This property has tenants, guests, and invitees that ingress and egress throughout the day.

122.   In addition to his ownership, Plaintiff also manages the property at 10960

Ratner Street As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

123.   Defendants allow homeless individuals with motor homes, tents, garbage, and other items constantly to impair, and frequently to completely block, the free flow of vehicular and pedestrian traffic to the property.

124.   Defendants allow homeless individuals with their encampments, motor homes, trash and other items predominately, and at times entirely, to block access to the property.

125.   Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property.

126.   Defendants also allow homeless individuals to break into Plaintiff's property at night to destroy the property and dump trash and other filth on Plaintiff's private property.

127.   Defendants allow homeless individuals to steal water and electricity from these properties.

128.   A homeless individual also has approached the tenants and demanded payment to avoid the tenants' cars being damaged. This is City-sanctioned extortion.

129.   Plaintiff has contacted Defendants about these issues numerous times and

Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

130.   This diminishes the value of the property and decreases the income derived from the property as Plaintiff has to offer reduced rents and struggles to gain or retain tenants.

**14600-14606 Arminta Street**

131.   Plaintiff Ratner-Stauber has an ownership interest in 14600-14606 Arminta Street, located in the City of Los Angeles, through the company 1647 Truman, LLC in which he owns 60%.

132.   14600-14606 Arminta Street is two industrial buildings of approximately 25,000 square feet each.

133.   This property has tenants, employees, guests, and invitees that ingress and egress throughout the day.

134.   In addition to his ownership, Plaintiff also manages the property at 14600-14606 Arminta Street. As the property manager, Plaintiff is responsible for, *inter alia*, leasing, tenant relationships, property maintenance and security, liaising with government agencies regarding the property, collecting rents, and payment of expenses relating to the aforementioned.

135.   Defendants allow homeless individuals with motor homes, tents, garbage,

and other items constantly to impair, and frequently to completely block, the free flow of vehicular and pedestrian traffic to the property.

136.   Defendants allow homeless individuals with their encampments, motor homes, trash and other items predominately, and at times entirely, to block access to the property.

137.   In addition, Defendants have turned a blind eye to violent crime in the neighborhood, including several murders, making access to the property unreasonably dangerous.

138.   Defendants also allow homeless individuals—members of the public—to freely access Plaintiff's private property.

139.   Defendants also allow homeless individuals to break into Plaintiff's property at night to destroy the property and dump trash and other filth on Plaintiff's private property.

140.   Defendants allow homeless individuals to steal water and electricity from this property.

141.   Plaintiff has contacted Defendants about these issues numerous times and Defendants allow homeless individuals to continue to access Plaintiff's private property, block access to Plaintiff's private property, and severely impair access to Plaintiff's private property.

142.   This diminishes the value of the property and decreases the income derived

from the property as Plaintiff has to offer reduced rents and struggles to gain or retain tenants.

143.    All of the Defendants' actions and/or nonactions alleged herein are the proximate cause of the damages Plaintiff alleges herein.

144.    The damages caused by the homeless to Plaintiff's property as alleged herein are present and continuing and have been so within the past three years.

145.    Under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and other similarly situated people who own property or have a property interest in land adjacent to the homeless encampments. The Plaintiff Class is defined as:

> All Los Angeles residents who have a property interest in property that is or has been intruded on by homeless individuals, or who have had the ingress and egress to their property blocked or otherwise severely impaired by homeless individuals, their encampments, or other items.

146.    The Plaintiff Class is so numerous that joinder of all the members would be impracticable. Los Angeles has a population of approximately 3,822,238 people. https://www.census.gov/quickfacts/fact/table/losangelescitycalifornia/PST045222. Further, there is an estimated 46,260 homeless people on any given night.

147.    Plaintiff's claims for prospective relief are typical to the members of the Plaintiff Class because Plaintiff and the Plaintiff Class have suffered similar harm from

the taking of property, nuisance, impaired access to their property, and economic harm from Defendants' policy of nonenforcement of the laws adjacent to Plaintiff's property and the property of those similarly situated. Plaintiff and Plaintiff Class have had their rights restricted by Defendants' actions as set forth in this Complaint.

148.   Plaintiff will fairly and adequately protect the interests of the Plaintiff Class. Plaintiff has no conflicts involving other class members or Defendants. Plaintiff understands his role and duties as a class representative in this litigation. Plaintiff is represented by competent and skilled counsel whose interests are fully aligned with the interests of the class. Not only has Plaintiff's counsel been defending litigants' federal constitutional rights across the nation, for 40 years, including in the United States Supreme Court, he has also been licensed to practice law in California for 37 years, making him specially qualified to litigate the federal and state law claims in this Complaint. Further, Plaintiff's counsel has litigated a class action before.

149.   Questions of law and fact are common to the class. These legal questions include but are not limited to:

   a.  Does it violate the takings clause of the fifth amendment for Defendants to allow homeless individuals access to Plaintiff's property and the property of those similarly situated?

   b.  Does it violate the takings clause of the fifth amendment for Defendants to allow the homeless to impede and/or block access to Plaintiff's property

and the property of those similarly situated by means of the lawless homeless encampments?

c. Do Defendants' actions and/or inactions in regard to the homeless encampments amount to a regulatory taking of Plaintiff's property and the property of those similarly situated?

d. Does it violate the equal protection clause for Defendants to choose to ignore their duty to Plaintiff and those similarly situated by failing to enforce health and safety laws on the public access to their property while enforcing said laws for other residents of Los Angeles arbitrarily and with no rational basis?

e. Does it violate California public nuisance law for Defendants to allow homeless encampments to create and maintain health and safety issues through action and/or inaction on the public access to Plaintiff's property and the property of those similarly situated?

f. Does it violate California private nuisance law for Defendants to create and maintain through action and/or inaction health and safety issues on the public access to Plaintiff's property and the property of those similarly situated?

g. Does it violate Article I, Section 19 of the California Constitution for Defendants to deprive Plaintiff and those similarly situated of the use and

enjoyment of their property without just compensation?

150.   Maintaining individual actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  Multiple courts issuing multiple injunctions governing the constitutionality and legality of Defendants' actions, specifically including Defendants' allowance of lawless zones within the homeless encampments, would be entirely untenable.  Doing so would only contribute to a state of uncertainty and confusion that allows the violations of law described in this Complaint to continue.

151.   This case involves "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications."  Fed. R. Civ. P. 23(b)(1)(A).

152.   Finally, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(1)(A).  There is no allegation that Plaintiff has been targeted because of anything unique to him as an individual.  Rather, he has been repeatedly targeted because of his membership in a class of people who own property adjacent to the lawless homeless encampments. Logically, injunctive relief for the "class as a whole" is the only mechanism available to afford relief in light of conduct directed specifically to the class.

# FIRST CLAIM FOR RELIEF

## (Fifth Amendment—Takings Clause)

153.   Plaintiff realleges all previously stated paragraphs.

154.   By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiff of his rights in violation of the Taking Clause of the Fifth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

155.   Defendants allows homeless individuals free access to Plaintiff's private property and the property of those similarly situated. Further, Defendants allow these individuals to bring with them filth, trash, and other junk onto Plaintiff's property. Defendants refuse to stop the public from accessing Plaintiff's property even when the trespasser is violent and armed with a weapon.

156.   Defendants have created a lawless zone in the form of a homeless encampment immediately adjacent to Plaintiff's property and the property of those similarly situated.

157.   The lawless zone on the public access to Plaintiff's property and the property of those similarly situated—rife with verbal and physical assaults, public urination and defecation, discarded needles, public sex acts and nudity, prostitution, solicitation, open fires, blocked streets and sidewalks, and more—has materially and

substantially blocked and/or impaired access to Plaintiff's property and the property of those similarly situated to such a degree that it amounts to a taking under the Fifth Amendment.

158.   Through their policy of nonenforcement of the laws and the creation of the lawless zone, Defendants have regulated Plaintiff's property and the property of those similarly situated creating catastrophic economic harm to the value of the property. This impact was entirely unexpected and unforeseeable.

159.   Plaintiff is entitled to just compensation for the time during which Defendants' action constitutes a taking of his property. *First English Evangelical Lutheran Church v. Cty. of L.A.*, 482 U.S. 304, 321, 107 S. Ct. 2378, 2389 (1987) ("We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective.").

## SECOND CLAIM FOR RELIEF

### (Fourteenth Amendment—Equal Protection Clause)

160.   Plaintiff realleges all previously stated paragraphs.

161.   By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiff of his right to equal protection in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

162.   Defendants arbitrarily determined to allow homeless encampments, with rampant violations of unenforced public health and safety laws, in some areas of the City while selectively enforcing health and safety laws in other areas of the City. In doing so, Defendants abdicated their duties under the law by declining to enforce health and safety standards in these areas and arbitrarily determining what communities are affected. This has placed a disproportionate burden on some people, property owners, and businesses, such as Plaintiff and those similarly situated, over other property owners' properties that are similar and comparable to Plaintiffs' properties.  The only difference between the Defendants' failure to address the damages caused to Plaintiffs' property and Defendants' willingness to address the damages to other properties is based upon Defendants' willingness to provide political favors to some property owners and to avoid negative publicity for high-profile Los Angeles events, such as the Super Bowl.

163.   By choosing to enforce health and safety laws to protect only some Los Angeles residents and business owners, Defendants have deprived Plaintiff and those similarly situated of the equal protection of the law with no rational basis for doing so.

## THIRD CLAIM FOR RELIEF

### (Violation of Cal. Civ. Code §§ 3480, *et seq.*—Public Nuisance)

164.   Plaintiff realleges all previously stated paragraphs.

165.   California law defines a nuisance as follows:

Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the

senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

Cal. Civ. Code § 3479.

166.  "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480.

167.  A private party, such as Plaintiff and those similarly situated, may bring a cause of action for public nuisance if the public nuisance is "specially injurious to himself," as is the case here. Cal. Civ. Code § 3493.

168.  Defendants' actions and/or inactions have created harmful conditions (a) to Plaintiff's health; that are (b) indecent or offensive to the senses; and (c) obstructive of the free use of property, so as to interfere with the comfortable enjoyment of life or property; that (d) unlawfully obstructs the free passage or use of a public right of way; (e) permits solicitation and prostitution near or at Plaintiff's property; (f) permits the sale of illegal substances at or near Plaintiff's property; (g) allows human waste and filth at or near Plaintiff's property; (h) allows open fires and fire hazards at or near Plaintiff's property; (i) allows rampant crime at or near Plaintiff's property; (j) allows the public free access to Plaintiff's property; (k) creates sewage flow onto Plaintiff's property; (l)

starts fires on Plaintiff's property; and (m) other health and safety dangers.

169.   As described herein, Defendants' refusal to maintain the public property (near and/or adjacent to Plaintiff's properties) under their control and to enforce laws and local ordinances, facilitates, perpetuates, creates, and maintains, a public nuisance. This failure to enforce laws in these lawless zones converts the public areas into cesspools of filth overrun with crime, disease, and indecency. These conditions are injurious to the public health and safety.

170.   Plaintiff and those similarly situated are specially injured because, as property owners near and/or adjacent to the homeless encampments, the access to their property is materially and substantially blocked and/or impaired. Additionally, the filth and discard from these encampments make their way onto Plaintiff's property by means of human action, rains, winds and more. Finally, fires from these dangerous conditions spread to Plaintiff's property and damage it. Plaintiff and those similarly situated have experienced unreasonable and substantial interference with the use and enjoyment of their property.

171.   Not only do these homeless encampments create a safety issue for Plaintiff and those similarly situated, but they also reduce the value of their property, both the land and the businesses owned by Plaintiff and those similarly situated suffer substantial economic loss. A "reduction in property values caused by activities on a neighboring piece of land, and an assault on the senses by noise, dust, and odors, are just the kinds

of harm that common law suits to abate a nuisance are designed to redress." *Solid Waste Agency v. United States Army Corps of Eng'rs*, 101 F.3d 503, 505 (7th Cir. 1996).

172.    Plaintiff and those similarly situated are also specially injured as their once beautiful views of the thriving City are impaired by the filth of third-world conditions at their doorstep.

173.    By failing to maintain the public property that is directly adjacent to Plaintiff's property and the property of those similarly situated, and by failing to enforce laws requiring the same, Defendants are perpetuating and facilitating this nuisance.

174.    Plaintiff and those similarly situated have experienced substantial, material, and unreasonable interference with the enjoyment and use of their property, impaired access to their property, and threats to their health and safety that is specially injurious to them as property owners directly adjacent to the homeless encampments.

## FOURTH CLAIM FOR RELIEF

### (Cal. Civ. Code §§ 3501, *et seq.*—Private Nuisance)

175.    Plaintiff realleges all previously stated paragraphs.

176.    Plaintiff and those similarly situated own property near and/or adjacent to homeless encampments. Defendants' actions and/or inactions have created conditions (a) to Plaintiff's health; that are (b) indecent or offensive to the senses; and (c) obstructive of the free use of property, so as to interfere with the comfortable enjoyment of life or property; that (d) unlawfully obstructs the free passage or use of a public right

of way; (e) permits solicitation and prostitution near or at Plaintiff's property; (f) permits the sale of illegal substances at or near Plaintiff's property; (g) allows human waste and filth at or near Plaintiff's property; (h) allows open fires and fire hazards at or near Plaintiff's property; (i) allows rampant crime at or near Plaintiff's property; (j) allows the public free access to Plaintiff's property; (k) creates sewage flow onto Plaintiff's property; (l) starts fires on Plaintiff's property; and (m) other health and safety dangers.

177.   As such, Plaintiff and those similarly situated have experienced substantial, material, and unreasonable interference with the enjoyment and use of their property, impaired access to their property, and threats to their health and safety that is specially injurious to them as property owners near and/or adjacent to the homeless encampments.

### FIFTH CLAIM FOR RELIEF

### (Cal. Const. art. I § 19—Inverse Condemnation)

178.   Plaintiff realleges all previously state paragraphs.

179.   The California Constitution mandates that "[p]rivate property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Cal. Const. Art. I § 19. Defendants have so materially and substantially impeded and burdened Plaintiff's property and the property of those similarly situated that it amounts to a regulatory taking and impediment to access without just compensation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff asks this Court:

A)    to declare that Defendants violated the Fifth and Fourteenth Amendments to the United States Constitution;

B)    to declare that Defendants violated article I § 19 of the California Constitution;

C)    to award Plaintiff and Plaintiff Class nominal and compensatory damages for the harm caused by Defendants pursuant to 42 U.S.C. § 1983 and other applicable law;

D)    to order Defendant to abate the nuisance as detailed herein;

E)    to award Plaintiff and Plaintiff Class compensatory damages for the duration of Defendants' taking of Plaintiff's and Plaintiff Class's property;

F)    to award Plaintiff and Plaintiff Class their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure §§ 1021.5 and 1036, and other applicable law;

G)    to grant such other and further relief as this Court should find just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

//

//

//

//

Dated: August 20, 2024

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

/s/David Yerushalmi
David Yerushalmi, Esq. (Ariz. Bar No. 009616; DC Bar  No. 978179; Cal. Bar No. 132011; NY Bar No. 4632568)
2020 Pennsylvania Ave NW, Suite 189
Washington, D.C. 20006
(646) 262-0500
dyerushalmi@americanfreedomlawcenter.org

AMERICAN FREEDOM LAW CENTER

Robert J. Muise, Esq. (Mich. Bar No. P62849)*
Kate Oliveri (Mich. Bar No. P79932)*
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org
koliveri@americanfreedomlawcenter.org
*Subject to *pro hac vice* admission


*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT