HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
MOLLY STEPHENS. Deputy City Attorney (SBN 232211)
EMERSON KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone:  213-978-1868/213-526-7336
Facsimile:  213-978-7011
Email:  molly.stephens@lacity.org
Email:  emerson.kim@lacity.org

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOM RATNER-STAUBER;<br><br>                           Plaintiff,<br><br>        vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; LOS ANGELES POLICE DEPARTMENT.<br><br>                      Defendants. | Case No. 2:24-cv-07043-JLS-(SSCx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS ACTION PURSUANT TO FED. R. CIV. PROC. 12(b)(1)**<br><br><u>Hearing</u><br>Date:  November 22, 2024<br>Time:  10:30 a.m.<br>Courtroom 8A<br>Hon. Josephine L. Staton |

RULE 12(b)(1) MOTION TO DISMISS ACTION

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR
COUNSEL:**

**PLEASE TAKE NOTICE THAT** on November 22, 2024, at 10:30 a.m. in
Courtroom 8A of the United States District Court for the Central District of California,
located at the First Street U.S. Courthouse, 350 West 1st Street, Los Angeles, CA 90012,
before the Honorable Josephine L. Staton, Defendants City of Los Angeles and the Los
Angeles Police Department (collectively, "Defendants") will, and hereby do, move for
an order dismissing this action filed by Plaintiff Adom Ratner-Stauber ("Plaintiff") for
lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil
Procedure on one or both of the following grounds:

- Plaintiff facially lacks standing to assert the federal claims providing
this Court with original jurisdiction, and the Court should not exercise supplemental
jurisdiction over the remaining state law claims.

- Plaintiff factually lacks standing to assert the federal claims
providing this Court with original jurisdiction, and the Court should not exercise
supplemental jurisdiction over the remaining state law claims

This Motion is based on this Notice of Motion, the attached Memorandum of
Points and Authorities, the accompanying Request for Judicial Notice and Declaration
of Salvador Rosales, the file and all pleadings in this matter, any oral argument, any
additional matters upon which judicial notice may be taken, and any and all other matters
this Court deems just and necessary.

This Motion is made following the conference of counsel pursuant to Central
District of California Local Rule 7-3, which took place on October 11, 2024.  This
Motion is being filed concurrently with Defendants' Notice of Motion and Motion to
Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),
which applies only if the Court determines that it has subject matter jurisdiction.

RULE 12(b)(1) MOTION TO DISMISS ACTION

Pursuant to Central District of California Local Rule 11-6.1, the attached Memorandum of Points and Authorities is less than 25 pages, excluding the caption, table of contents, table of authorities, and signature block. The undersigned, counsel of record for Defendants, further certifies that the attached Memorandum of Points and Authorities contains 6,408 words, excluding the caption, table of contents, table of authorities, and signature block, in compliance with the word limit of Local Rule 11-6.1.

Dated: October 21, 2024

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
MOLLY STEPHENS, Deputy City Attorney
EMERSON KIM, Deputy City Attorney


By:    _/s/ Molly Stephens_____
       Molly Stephens
       Deputy City Attorney
       Attorneys for Defendants

RULE 12(b)(1) MOTION TO DISMISS ACTION

1
2

# **TABLE OF CONTENTS**

3
4

I.    INTRODUCTION ..................................................................................1

5

II.    RELEVANT BACKGROUND...............................................................2

6

    A.    Plaintiff Seeks to Recover for Alleged Injuries by Homeless People ........2

7

    B.    Plaintiff Filed His Original Complaint Against Defendants Based on

8
           Their Failure to Enforce Laws Against the Homeless People ...................3

9

    C.    Plaintiff Changes the Theory of the Case in an Attempt to Invoke This

10
           Court's Jurisdiction .....................................................................4

11

    D.    Plaintiff's New Allegations Are False ................................................6

12
13

III.    LEGAL STANDARD ...........................................................................7

14

IV.    LEGAL ARGUMENT ..........................................................................9

15

    A.    Plaintiff Lacks Article III Standing Because His Alleged Injuries Were

16
           Not Caused by Defendants...........................................................9

17

        1.    Plaintiff Does Not Allege Sufficient Facts Tying Defendants'

18
              Alleged Relocation Actions to His Alleged Injuries……….......10

19

            a.    Plaintiff Does Not Plausibly Allege the First Link in the

20
                 Chain of Causation—a Relocation Policy…………………10

21

            b.    Plaintiff Does Not Plausibly Allege the Second Link in the

22
                 Chain of Causation—That a Relocation Policy Led Homeless

23
                 People to Move to Plaintiff's Property……………………11

24

            c.    Plaintiff Does Not Plausibly Allege the Third Link in the

25
                 Chain of Causation—That a Relocation Policy Led Homeless

26
                 People to Inflict Damages…………………………………13

27
28

i

2.    The Facts Show that the Alleged Relocation Polices Do Not
Exist……………………………………………………… 13

3.    Plaintiff Does Not Allege Sufficient Facts Tying Defendants'
Alleged Enforcement Decisions to His Alleged Injuries…………14

B.    Plaintiff Lacks Article III Standing to Assert Claims Based on a Failure to
Enforce Laws, Which Is Not Redressable by the Court ...........................15

C.    Without Jurisdiction Over the Federal Claims, the Court Should Not
Exercise Supplemental Jurisdiction Over the State Law Claims..............16

D.    Plaintiff Should Not Be Allowed Another Attempt to Allege Standing...18

II.    CONCLUSION ....................................................................................................19

RULE 12(b)(1) MOTION TO DISMISS ACTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AE ex rel. Hernandez v. County of Tulare*,
666 F.3d 631 (9th Cir. 2012) ......................................................................... 10

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ......................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 8

*Burns v. Mammoth Media, Inc.*,
2021 WL 3500964 (C.D. Cal. Aug. 6, 2021) ............................................. 8, 14

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ........................................................................................ 17

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ......................................................................... 7

*Doe v. Holy See*,
557 F3d 1066 (9th Cir. 2009) .......................................................................... 8

*Doe v. Lombardo*,
-- F. Supp. 3d --, 2024 WL 3886299 (D. Nev. Aug. 16, 2024) .................... 9, 14

*Herd v. County of San Bernardino*,
311 F. Supp. 3d 1157 (C.D. Cal. 2018) ........................................................ 10

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......................................................................... 8

*Linda R. S. v. Richard D.*,
410 U. S. 614 (1973) ....................................................................................... 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................. 8, 9, 13

RULE 12(b)(1) MOTION TO DISMISS ACTION

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ................................................................8, 9

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) ...................................................................10

*Morris v. City of Los Angeles*,
   2023 WL 6157306 (C.D. Cal. July 26, 2023).......................................10, 11

*PNC Equip. Fin., LLC v. Cal. Fairs Fin. Auth.*,
   2012 WL 12506870 (C.D. Cal. Feb. 9, 2012) ............................................8

*Railroad 1900, LLC v. City of Sacramento*,
   604 F. Supp. 3d 968 (E.D. Cal. 2022) .......................................15, 16, 17

*Roe v. City and County of San Francisco*,
   2024 WL 3488249 (N.D. Cal. July 19, 2024) .......................................8, 16

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...................................................................9

*Schmier v. U.S. Court of Appeals*,
   279 F.3d 817 (9th Cir. 2002) ...................................................................18

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) .....................................................................9

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989) ...................................................................7

*United States v. Texas*,
   599 U.S. 670 (2023)...................................................................................16

*Warth v. Seldin*,
   422 U.S. 490 (1975)...................................................................................11

*WildEarth Guardians v. U.S. Forest Serv.*,
   70 F.4th 1212 (9th Cir. 2023) .................................................9, 12, 13, 15

**Statutes**

28 U.S.C. § 1367(c) ......................................................................................17

42 U.S.C. § 1983 ..............................................................................3, 6, 10, 11

iv

RULE 12(b)(1) MOTION TO DISMISS ACTION

Cal. Gov. Code § 910...........................................................................3

Fed. Rule Civ. Proc. 12(b)(1)...........................................................4, 7, 8

Fed  Rule Civil Proc. 12(b)(6) ..........................................................4, 8

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure..........................4

RULE 12(b)(1) MOTION TO DISMISS ACTION

## I.    INTRODUCTION

In this case, Plaintiff Adom Ratner-Stauber ("Plaintiff") complains that he has been injured by homeless people around his properties who commit crimes such as theft, trespass, drug use, public urination, and obstructing the right of way.  In his original complaint, Plaintiff sought to hold Defendants City of Los Angeles and the Los Angeles Police Department (collectively, "Defendants") liable for the injuries caused by these homeless people based on Defendants' alleged failure to enforce the laws.  Plaintiff asserted claims against Defendants under the U.S. Constitution and California state law, basing the Court's original jurisdiction on his federal claims.

After Defendants established in their first motion to dismiss that Plaintiff lacks Article III standing to assert claims against them for their failure to enforce laws against others, Plaintiff voluntarily amended his complaint in an attempt to tie some affirmative conduct of Defendants to his injuries.  In his Amended Complaint ("AC"), Plaintiff changes the theory of his case, now alleging that Defendants have policies to "physically relocate" homeless people to his properties.  Plaintiff alleges no details about these policies, and he mechanically replaces dozens of allegations that Defendants "allow" homeless people to injure him through nonenforcement of the laws with allegations that "Defendants' Relocation Actions" allow homeless people to injure him.

This Court does not have subject matter jurisdiction over this action seeking to hold Defendants liable for alleged injuries caused by homeless people.  Plaintiff cannot demonstrate Article III standing, which requires that he show an injury in fact caused by Defendants that is redressable by a court order.  Plaintiff's alleged injuries were caused by homeless people, and Plaintiff cannot fairly trace any conduct by Defendants to his injuries—either facially or factually—to demonstrate that Defendants caused his injuries for purposes of standing.  Among other things, Plaintiff does not plausibly allege that Defendants had a relocation policy, that it led to the homeless encampments around his properties, or that it led to homeless people in those encampments committing crimes. In fact, the allegations about the existence of a policy are false.  Defendants have no

1

policy to relocate homeless people to private property owned by Plaintiff or others similarly situated, as Plaintiff alleges.

Fundamentally, this remains an action about Defendants' failure to enforce laws against certain homeless people, as Plaintiff originally alleged. Plaintiff lacks Article III standing to assert his claims against Defendants not only because his alleged injuries caused by others are not fairly traceable to Defendants' nonenforcement of the laws, but also because the law is clear that the failure to enforce laws against others is not redressable by a court order. These defects cannot be cured.

Because the Court lacks original jurisdiction over the federal claims, it should not exercise supplemental jurisdiction over the remaining state law claims, which properly belong in state court. Defendants respectfully request that this action be dismissed for lack of subject matter jurisdiction.

## II.    RELEVANT BACKGROUND

### A.    Plaintiff Seeks to Recover for Alleged Injuries by Homeless People

Plaintiff indirectly owns and/or manages nine groups of properties in the City of Los Angeles. AC (ECF No. 15) ¶¶ 32-35, 45-56, 66-68, 78-80, 90-91, 100-104, 119-121, 129-131, 140-143. In this action, Plaintiff complains about the homeless people around these properties. *See, e.g.*, *id.* ¶¶ 3, 23-24, 36-41, 57-62, 69-76, 81-87, 92-97, 105-116, 122-126, 132-137, 144-150. According to Plaintiff, the homeless people (i) impair and block traffic or access to the properties (*id.* ¶¶ 37-38, 58-59, 71-72, 82-83, 93-94, 112-113, 122-123, 132-133, 144-145); (ii) "freely trespass," intrude, live, or run rampant on the properties, sometimes leaving graffiti, trash, or feces (*id.* ¶¶ 39, 60, 73-74, 84-85, 87, 95-96, 105, 109-111, 114, 124, 134, 147); (iii) break into the properties at night to "destroy" them, "dump trash and other filth" on them, or start fires (*id.* ¶¶ 40, 61, 115, 125, 135, 148); (iv) steal water and electricity, which caused a fire in one instance that allegedly burned a tree (*id.* ¶¶ 41, 62, 75, 86, 97, 116, 126, 136, 149); (v) steal other items from the properties, such as HVAC parts from the roof (*id.* ¶¶ 86, 97, 105); and (vi) threaten tenants (*id.* ¶ 137). Plaintiff alleges that he has been damaged

2

by the actions of these homeless people because they have prevented the lawful use and enjoyment of his properties, have materially and substantially diminished the economic value of his properties, have forced him to spend money to protect his properties, and have created "life threatening conditions." *Id.* ¶¶ 25-27, 29, 43-44, 63-64, 77, 89, 99, 106-108, 118, 128, 139, 151.

### B.    Plaintiff Filed His Original Complaint Against Defendants Based on Their Failure to Enforce Laws Against the Homeless People

In his original complaint, Plaintiff alleged that Defendants are liable for the actions of the homeless people around his properties because Defendants "allow" their illegal actions by failing to enforce laws against them, thereby creating "lawless zones." *See* Compl. (ECF No. 1) ¶¶ 1, 3, 5-6, 21, 27-33, 49-53, 56, 62-67, 73-77, 79, 84-89, 96, 100, 102-108, 113-118, 123-127, 129, 135-141, 150, 155-156, 169.  These allegations were based on facts that Plaintiff previously set forth in an affidavit he submitted to the City of Los Angeles in June 2024 pursuant to California Government Code section 910, sworn under oath before a notary public.  *See* Request for Judicial Notice, filed concurrently herewith ("RJN"), Ex. A (Affidavit).  In that affidavit, Plaintiff's sole complaint was that Defendants "allow" homeless people to engage in illegal conduct around his properties by not doing anything about it, even after Plaintiff contacts the City.  *Id.* ¶¶ 7-12, 28-32, 34, 40-45, 51-57, 62-67, 74-75, 78-86, 91-96, 101-105, 107, 113-114, 116-119.  The original complaint repeated the approximately 60 paragraphs of facts from the affidavit about Defendants "allowing" homeless people to engage in illegal conduct around Plaintiff's properties.  *Compare id.*, *with* Compl. (ECF No. 1) ¶¶ 28-33, 49-53, 56, 62-67, 73-79, 84-89, 96-97, 100-108, 113-118, 123-127, 129, 135-136, 138-141.

The original complaint asserted two claims under the Takings Clause and Equal Protection Clause of the U.S. Constitution, pursuant to 42 U.S.C. § 1983, based on Defendants' alleged nonenforcement of the laws, along with three additional claims under California state law.  Compl. (ECF No. 1) ¶¶ 153-179.  Plaintiff based the Court's

3

original jurisdiction on the federal claims.  *Id.* ¶ 10.

###### C.     Plaintiff Changes the Theory of the Case in an Attempt to Invoke This Court's Jurisdiction

In response to Plaintiff's original complaint, Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim.  *See* Mot. to Dismiss (ECF No. 14).  The motion established, among other things, that Plaintiff lacks Article III standing to assert claims based on Defendants' failure to enforce laws against others.  *Id.* at 5-7, 11-12.

Rather than oppose the motion, Plaintiff filed the AC.  *See* AC (ECF No. 15).  In an attempt to plead around the arguments raised in the motion, particularly the standing argument showing that the Court lacks jurisdiction, Plaintiff has changed the theory of his case.  Plaintiff now alleges that the "lawless zones" in the homeless encampments around his properties have been created not only by Defendants' failure to enforce the laws, but also by Defendants' affirmative acts to "physically relocate" homeless people from "visible locations" to "less visible locations."  *Compare id.* ¶¶ 3-5, 24, *with* Compl. (ECF No. 1) ¶¶ 1, 5-6.

Plaintiff's descriptions of these new affirmative acts add a lot of words but do not say much more.  Plaintiff alleges that Defendants have "policies, procedures, and conduct of moving homeless encampments from public property situated in one neighborhood to another neighborhood, and more particularly to and around Plaintiff's property (and other private property similarly situated), with the intentional, knowing, and/or reckless purpose to move the homeless from public view on public property to less visible locations on or near private property," which Plaintiff calls "Defendants' Public to Private Relocation Actions."  AC (ECF No. 15) ¶ 19.  Plaintiff also alleges that Defendants have "policies, procedures, and conduct of moving homeless encampments from and around private property situated in one more favored neighborhood (*i.e.*, more affluent neighborhoods and thus angering homeowners with more political influence

4

RULE 12(b)(1) MOTION TO DISMISS ACTION

with Defendants) to another neighborhood, and more particularly to and around Plaintiff's property (and other private property similarly situated), with the intentional, knowing, and/or reckless purpose to move the homeless from the more favored neighborhood to the less favored locations on or near private property," which Plaintiff calls "Defendants' Favored Private to Less Favored Private Relocation Actions." *Id.* ¶ 21. Plaintiff collectively defines these two alleged types of relocation actions as "Defendants' Relocation Actions." *Id.*

Plaintiff alleges virtually no details about Defendants' Relocation Actions. For example, Plaintiff does not allege the source of the policies, procedures, and conduct, how and when they were officially adopted by Defendants, how many times they have been used and in what locations, or when they have been used to move homeless people on or near Plaintiff's property. In fact, Plaintiff alleges only a single purported example of Defendants relocating homeless people. *See id.* ¶¶ 19-21. Plaintiff alleges that Defendants moved homeless people from public to private property when they "cleared homeless encampments around Sofi Stadium before the recent 2022 Super Bowl because it created a 'safety issue' for visitors." *Id.* ¶ 20. Plaintiff cannot identify where Defendants allegedly moved these people. *See id.* More importantly, Defendants could not possibly have moved these people because they had no jurisdiction over these encampments given that ***SoFi Stadium is not located in the City of Los Angeles***. RJN ¶ 1. Indeed, the "public reporting," which Plaintiff alleges to have done before filing this action, states that Caltrans, a California state agency, cleared these encampments. *See* AC (ECF No. 15) at 1; RJN ¶ 4 & Exs. D-H.

In describing the conduct that affects each of the nine groups of properties, Plaintiff continues to copy the facts from his June 2024 affidavit. *Compare* RJN Ex. A (Affidavit), *with* AC (ECF No. 15) ¶¶ 32-151. Instead of alleging that "Defendants allow" homeless people to engage in illegal conduct, however, Plaintiff merely has done a global search and replace to substitute "Defendants allow" with "Defendants' Relocation Actions have created the conditions to allow" homeless people to engage in

5

illegal conduct. *Compare* RJN Ex. A (Affidavit) ¶¶ 7-11, 28-32, 34, 40-45, 51-57, 62-67, 74-75, 78-86, 91-96, 101-105, 107, 113-114, 116-119, *with* AC (ECF No. 15) ¶¶ 37-41, 58-62, 65, 71-76, 82-88, 93-98, 105-106, 109-111, 113-117, 122-127, 132-136, 138, 144-145, 147-150.  Plaintiff does not allege a single time that Defendants moved a homeless person to any of the nine groups of properties.  His only allegation about homeless people moving on or near his properties is a single statement, devoid of any details, that "[o]n many occasions, the [homeless] trespassers in the Lawless Zones have informed Plaintiff that Defendants relocated them near or on Plaintiff's property and informed them that they had the legal right to remain."  AC (ECF No. 15) ¶ 31.

Plaintiff asserts the same two claims under the U.S. Constitution as he asserted in the original complaint, although he has changed the language that Defendants "allow," "refuse to stop," or have a "policy of nonenforcement of the laws" against the homeless, to "Defendants' Relocation Actions."  *Compare* Compl. (ECF No. 1) ¶¶ 155, 158, 162-163, *with* AC (ECF No. 15) ¶¶ 165, 168, 172-173.  Plaintiff also adds a third claim under the state-created danger doctrine of the U.S. Constitution, pursuant to 42 U.S.C. § 1983, again based on "Defendants' Relocation Actions."  AC (ECF No. 15) ¶ 175.  Plaintiff continues to assert the three claims under California state law.  *Id.* ¶¶ 176-193.

### D.    Plaintiff's New Allegations Are False

It is not surprising that Plaintiff cannot allege a single detail about the so-called "Defendants' Relocation Actions" because they do not exist.  *See* Decl. of Salvador Rosales, filed concurrently herewith ("Rosales Decl."), ¶ 7.  Defendants do not have policies, procedures, and conduct of moving homeless people "from public view on public property to less visible locations on or near private property," or of moving homeless people "from and around private property situated in a more favored neighborhood . . . to another neighborhood."  *Id.*; AC (ECF No. 15) ¶¶ 19, 21.

The laws providing Defendants with authority to clear homeless encampments are set forth in Los Angeles Municipal Code sections 41.18 and 56.11.  RJN Exs. B-C; *see also* Rosales Decl., ¶ 3.  Section 41.18 prohibits a person from obstructing a street,

sidewalk, or other public right-of-way by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, in violation of specific circumstances defined in the ordinance, such as when the person or property is within two feet of a fire hydrant or when the City Council determines that the public health, safety, or welfare is served by the prohibition. *See* RJN Ex. B. Section 56.11 prohibits a person from storing personal property in public areas under certain specific circumstances defined in the ordinance, such as when the personal property obstructs City operations, poses an immediate threat to the health or safety of the public, or is unattended or excessive, with the City providing pre-removal and post-removal notices. *See* RJN Ex. C.

Defendants do not physically move any individuals under these ordinances unless a person commits a crime subject to arrest, in which case the person may be taken into custody by the Los Angeles Police Department. Rosales Decl. ¶ 4. Defendants may facilitate outreach services by third parties, such as the Los Angeles Homeless Services Authority or a local service provider, to help the person find shelter or housing. *Id.* ¶ 5. If the person voluntarily accepts such assistance, the person may be transferred to a shelter or service provider. *Id.* Otherwise, the person is free to leave the area, and it is up to the person where to go. *Id.* ¶ 6. Defendants do not instruct the person to move or relocate to a particular area or neighborhood. *Id.*

Defendants did not clear any encampments around SoFi Stadium before the 2022 Super Bowl. *Id.* ¶ 8.

## III.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction. A federal court lacks subject matter jurisdiction when a plaintiff lacks Article III standing. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). It is Plaintiff's burden to demonstrate standing, which

7

requires that he show "(1) an injury in fact; (2) caused by the defendant; that is (3) redressable by a court order." *Roe v. City and County of San Francisco*, 2024 WL 3488249, at *2 (N.D. Cal. July 19, 2024) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "A motion under Rule 12(b)(1) may challenge the court's jurisdiction facially, based on the legal sufficiency of the claim, or factually, based on the legal sufficiency of the jurisdictional facts." *Burns v. Mammoth Media, Inc.*, 2021 WL 3500964, at *1 (C.D. Cal. Aug. 6, 2021); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

For a facial attack under Rule 12(b)(1), "the court considers the complaint's allegations to be true, and draws all reasonable inferences in plaintiff's favor." *Burns*, 2021 WL 3500964, at *1 (citing *Doe v. Holy See*, 557 F3d 1066, 1073 (9th Cir. 2009)). The court may also consider documents that are the proper subject of judicial notice. *PNC Equip. Fin., LLC v. Cal. Fairs Fin. Auth.*, 2012 WL 12506870, at *6 n.29 (C.D. Cal. Feb. 9, 2012). "The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly* . . . and *Ashcroft v. Iqbal*." *Leite*, 749 F.3d at 1121. These pleading standards require "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For a factual attack under Rule 12(b)(1), "the court is not required to accept the allegations of the complaint as true and may consider additional evidence outside of the pleadings." *Burns*, 2021 WL 3500964, at *1 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal

sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* The review of such evidence does not "convert[] the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## IV.    LEGAL ARGUMENT

### A.    Plaintiff Lacks Article III Standing Because His Alleged Injuries Were Not Caused by Defendants

To satisfy the causation element of standing, Plaintiff must demonstrate that his injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). "While a showing of proximate cause is not required, a plaintiff must 'establish a line of causation between defendants' action and [the] alleged harm that is more than attenuated.'" *Doe v. Lombardo*, -- F. Supp. 3d --, 2024 WL 3886299, at *5 (D. Nev. Aug. 16, 2024) (second internal quotation marks omitted and quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)).

"[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562. A plaintiff may satisfy standing by demonstrating that "the defendant's action exerts a 'determinative or coercive effect' on the third-party conduct that directly causes the injury." *WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1217 (9th Cir. 2023). "In cases where a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and the Ninth Circuit Court of Appeals have found the causal chain too weak to support standing at the pleading stage." *Lombardo*, -- F. Supp. 3d --, 2024 WL 3886299, at *5 (internal quotation marks and

9

punctuation omitted).

Here, Plaintiff alleges that he has been injured by the actions of homeless people around his properties. *See supra* § II. Plaintiff seeks to hold Defendants liable for these injuries because Defendants either relocate homeless people to his properties or do not enforce the laws against homeless people around his properties. *See supra* § II.B. Plaintiff lacks Article III standing because he does not, and cannot, allege a plausible chain of causation to tie Defendants' challenged conduct to his alleged injuries.

### 1. Plaintiff Does Not Allege Sufficient Facts Tying Defendants' Alleged Relocation Actions to His Alleged Injuries

Under Plaintiff's new theory that Defendants allegedly had policies to relocate homeless people from public areas or more favored neighborhoods to private areas or less favored neighborhoods, the line of causation between Defendants' alleged policies and Plaintiff's injuries is too implausible and attenuated to support standing.

### a. Plaintiff Does Not Plausibly Allege the First Link in the Chain of Causation—a Relocation Policy

To assert the three U.S. constitutional claims against Defendants pursuant to 42 U.S.C. section 1983, Plaintiff must plausibly allege that Defendants had "a policy officially adopted by the municipality," whether through a law, custom, or practice. *See Miranda v. City of Cornelius*, 429 F.3d 858, 869 (9th Cir. 2005). "To establish that 'the municipality had a policy,' . . . a plaintiff must do more than merely allege that a municipal defendant 'maintained or permitted an official policy . . . of knowingly permitting . . . the type of wrongs' a plaintiff alleges elsewhere in the complaint." *Morris v. City of Los Angeles*, 2023 WL 6157306, at *3 (C.D. Cal. July 26, 2023) (quoting *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)). Conclusory allegations of general policies, without any facts showing the existence of such policies, do not suffice. *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1167-68 (C.D. Cal. 2018) (dismissing § 1983 claim where the plaintiff alleged 11 "customs, practices, or policies," but "fail[ed] to allege any facts showing that any of these claimed policies

10

or customs actually exist"); *Morris*, 2023 WL 6157306, at *4 (dismissing § 1983 claim where the plaintiff "list[ed] possible general policies but fail[ed] to allege any facts showing the existence of a policy").

Here, Plaintiff does not plausibly allege the existence of relocation polices. For each purported relocation policy (moving homeless people from public to private property and moving them from more favored to less favored private neighborhoods), Plaintiff includes only a single, conclusory allegation that Defendants had a policy of intentionally, knowingly, and/or recklessly moving homeless people to the other locations. *See* AC ¶¶ 19, 21. Plaintiff alleges no facts to show that the polices actually exist, such as the source of the policies, when they were adopted, and where and when they have been used. *See supra* § II.B. Indeed, the single example of the purported use of the policies during the 2022 Super Bowl is completely inapplicable; that cleanup was not even done in the City of Los Angeles. *See id.*

Because Plaintiff has only conclusory allegations that Defendants have policies to conduct the relocations he complains of elsewhere in the AC, he does not plausibly allege the existence of a policy, and the first link in the chain of causation for standing fails. *See Morris*, 2023 WL 6157306, at *3.

   **b.    Plaintiff Does Not Plausibly Allege the Second Link in the Chain of Causation—That a Relocation Policy Led Homeless People to Move to Plaintiff's Property**

For standing, Plaintiff must also show that Defendants' polices led to the homeless encampments around his properties that allegedly personally damaged him. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (for standing in a class action, a named plaintiff must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). Even if Plaintiff could plausibly allege the existence of a relocation policy, he fails to allege the second link in the chain of causation—that the relocation policy led to homeless people setting up encampments in and around his properties.

Although the AC details encampments around nine groups of Plaintiff's properties, Plaintiff does not have a single fact that Defendants relocated homeless people to those encampments, such as approximate dates of relocation, approximate number of people relocated, where they were relocated from, or even that they were relocated pursuant to one of Defendants' alleged policies.

The only allegation included in the AC that attempts to tie Defendants to the homeless encampments around his properties is a single general allegation that "[o]n many occasions, the trespassers in the Lawless Zones have informed Plaintiff that Defendants relocated them near or on Plaintiff's property and informed them that they had the legal right to remain." AC ¶ 31. This allegation, purporting to cover all nine groups of properties and devoid of any facts, such as how the people were relocated by Defendants, how they knew it was Defendants relocating them, and where they were relocated from, is too implausible and attenuated to show that Defendants' alleged relocation polices led to homeless encampments on or near Plaintiff's properties. For example, this allegation does not show that any homeless people were moved pursuant to an official policy; a person could have moved as a result of the actions of an individual officer. It also does not show that homeless people were moved from "public view on public property" or from a "more favored neighborhood," as Plaintiff alleges. Even the phrase "Defendants relocated them" is ambiguous. The homeless people themselves could have chosen to relocate at or near Plaintiff's property after a cleanup by Defendants. While the cleanup would have caused them to relocate, where to relocate was up to them.

Moreover, as set forth above, to show that Defendants caused homeless people, who are third parties making independent decisions, to relocate on or near Plaintiff's properties, Plaintiff must allege that Defendants' actions exerted a "determinative or coercive effect" on homeless people. *See WildEarth Guardians*, 70 F.4th at 1217. There are no allegations that Defendants affirmatively directed homeless people to set up camp on or near Plaintiff's properties or forced them to remain there. Accordingly, the second

link in the chain of causation for standing fails.

        **c.**    **Plaintiff Does Not Plausibly Allege the Third Link in the Chain of Causation—That a Relocation Policy Led Homeless People to Inflict Damages**

For standing, Plaintiff must also show that Defendants' polices led to the homeless people around his properties committing crimes, such as theft, trespass, open fires, and obstructing the right of way, that allegedly caused him injury. *See supra* § II; AC ¶¶ 17, 37-41, 58-62, 71-75, 82-87, 93-97, 105, 109-116, 122-126, 132-137, 144-145, 147-149. Even if Plaintiff could plausibly allege the existence of a relocation policy that led homeless people to move on or near his properties, he fails to allege the third link in the chain of causation—that the relocation policy led homeless people to commit crimes on or near his properties. It was the independent decision of homeless people to commit any crimes on or near Plaintiff's properties. There are no allegations that Defendants played any role in a homeless person's commission of a crime—and certainly no allegations that Defendants exerted a "determinative or coercive effect" on homeless people committing crimes around Plaintiff's properties. *See WildEarth Guardians*, 70 F.4th at 1217. For example, Plaintiff does not allege that Defendants forced homeless people to commit crimes or gave them assistance in doing so.

Plaintiff therefore does not plausibly allege the third link in the chain of causation for standing. Because Plaintiff does not plausibly allege that his injuries are "fairly traceable" to Defendants' alleged relocation actions "and not the result of the independent action of some third party not before the court," he facially lacks standing to assert his U.S. constitutional claims against Defendants. *See Lujan*, 504 U.S. at 560.

        **2.**    **The Facts Show that the Alleged Relocation Polices Do Not Exist**

As set forth above, Plaintiff does not plausibly allege the existence of the relocation policies that are now the focus of this case. *See supra* § IV.A.1(a). Nor can he. No such polices exist, and his allegations are false. Defendants' cleanup of homeless encampments is governed by Los Angeles Municipal Code sections 41.18 and 56.11.

13

*See supra* § II.C.  Those ordinances do not provide for Defendants to move a person from the cleanup area to another location.  *See* RJN Ex. B (§ 41.18), Ex. C (§ 56.11).  Defendants also do not have any other policies, procedures, or conduct of moving homeless people "from public view on public property to less visible locations on or near private property," or of moving homeless people "from and around private property situated in a more favored neighborhood . . . to another neighborhood," as Plaintiff alleges.  *See* AC ¶¶ 19, 21; *supra* § II.C; Rosales Decl. ¶ 7.  Without a relocation policy, the first link in the chain of causation is broken, and Plaintiff factually lacks standing to assert his claims under the U.S. Constitution against Defendants.  *See supra* § IV.A.1; *Burns*, 2021 WL 3500964, at *4.

### 3.    Plaintiff Does Not Allege Sufficient Facts Tying Defendants' Alleged Enforcement Decisions to His Alleged Injuries

Although Plaintiff's AC is centered around his new theory that Defendants have polices to relocate homeless people to his properties, he may argue, as he did in the conference of counsel pursuant to Local Rule 7-3, that this case is about Defendants "relocating" people by clearing homeless encampments in some areas of the City, knowing that homeless people will move elsewhere and commit crimes.  As an initial matter, this is just a different way of phrasing Plaintiff's initial theory—that Defendants do not enforce laws against homeless people near Plaintiff's properties while enforcing laws against homeless people elsewhere.  Allegations that a government entity failed to enforce laws against third parties, however, is insufficient to establish that the government's actions are fairly traceable to the injuries caused by the third parties for purposes of standing.  *See Lombardo*, -- F. Supp. 3d --, 2024 WL 3886299, at *6 (the plaintiff lacked standing to challenge Nevada's system of legalized prostitution because, *inter alia*, "generic allegations against Government Defendants which rest on their mere failure to intervene in otherwise illegal behavior are not, by themselves, adequate to establish traceability").  In addition, as set forth in more detail below, a failure to enforce laws against others is not a redressable interest for standing purposes.  *See infra* § IV.B.

14

RULE 12(b)(1) MOTION TO DISMISS ACTION

In any event, this theory is even more attenuated than Plaintiff's affirmative relocation theory. Under this theory, Defendants do nothing except clear an encampment in one area of the city. Homeless people then make independent decisions about whether to relocate and where, whether to stay in the location they choose, and whether to commit a crime. Defendants have no "'determinative or coercive effect" on the third-party conduct that directly causes the injury, as required for standing. *See WildEarth Guardians*, 70 F.4th at 1217.

**B.    Plaintiff Lacks Article III Standing to Assert Claims Based on a Failure to Enforce Laws, Which Is Not Redressable by the Court**

As set forth above, Plaintiff does not plausibly allege the existence of a municipal policy to relocate homeless people, and his unsupported allegations that such a policy exists are false. *See supra* §§ IV.A.1(a), IV.A.2. Plaintiff is therefore left with his original theory that Defendants do not enforce the laws against the homeless people around his properties. *See supra* § IV.A.3. Plaintiff lacks Article III standing to assert his claims against Defendants not only because Defendants' non-enforcement of the laws against others is not fairly traceable to his injuries, but also because the law is clear under a long line of cases starting with *Linda R. S. v. Richard D.*, 410 U. S. 614 (1973), that the failure to enforce laws against others is not a redressable interest.

A published decision from the Eastern District of California, which relies on *Linda R. S.* and subsequent cases, is directly on point. *See Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968 (E.D. Cal. 2022). The plaintiff in that case, like Plaintiff here, asserted claims under the U.S. Constitution for a city's "alleged failure to enforce anti-camping and other ordinances against homeless individuals in the area surrounding plaintiff's property," which allegedly injured the plaintiff. *Id.* at 973-74. Recognizing the principle that a private citizen lacks a "judicially cognizable interest" in the prosecution or non-prosecution of another in either a criminal prosecution or civil enforcement action, the court in *Railroad 1900* held that the plaintiff lacked standing to sue the city for failing to enforce the laws. *Id.* at 974. Most recently, the Northern

15

RULE 12(b)(1) MOTION TO DISMISS ACTION

District of California followed *Railroad 1900* this summer to hold that residents and businesses in the Tenderloin of San Francisco lacked standing to sue the city and county for "allowing" the Tenderloin to become a dangerous, unsanitary lawless zone by not enforcing drug and anti-encampment laws. *Roe*, 2024 WL 3488249, at *3.

The U.S. Supreme Court explained in detail the reasons for the rule that a plaintiff lacks standing to challenge a failure to enforce laws against others in the recent case of *United States v. Texas*, 599 U.S. 670 (2023). There, Texas and Louisiana challenged the Department of Homeland Security's failure to enforce two immigration laws that, unlike here, included a statutory mandate providing that the Department "shall arrest and detain." *Id.* at 674. In holding that the plaintiffs lacked standing to sue the Department for failure to enforce the laws, the U.S. Supreme Court explained that federal courts do not entertain lawsuits challenging the executive's failure to enforce laws for a number of reasons, including: (i) "when the Executive Branch elects *not* to arrest or prosecute, it does not exercise coercive power over an individual's liberty or property, and thus does not infringe upon interests that courts often are called upon to protect"; (ii) "courts generally lack meaningful standards for assessing the propriety of enforcement choices," which are affected by limited resources and "ever-shifting public-safety and public-welfare needs"; and (iii) entertaining such lawsuits would open the door to a myriad of underenforcement challenges against the executive branch, which would risk the judiciary encroaching on the powers of the executive, contrary to the constitutionally defined separation of powers. *Id.* at 678-81 (emphasis in original).

The law is clear—Plaintiff lacks a judicially cognizable, redressable interest in Defendants' failure to enforce laws against homeless people around his properties, and he therefore lacks standing to assert his claims under the U.S. Constitution.

## C.    Without Jurisdiction Over the Federal Claims, the Court Should Not Exercise Supplemental Jurisdiction Over the State Law Claims

As the AC makes clear, Plaintiff bases the Court's original jurisdiction in this case on federal question jurisdiction as a result of the three claims under the U.S.

16

Constitution.  AC ¶ 6.  Because Plaintiff does not have Article III standing to assert his claims against Defendants under the U.S. Constitution, the Court should not exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See* 28 U.S.C. § 1367(c) (district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction").

In deciding whether to exercise supplemental jurisdiction over state law claims, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*

Here, as in *Railroad 1900*, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims given Plaintiff's lack of standing to assert his federal claims.  *See Railroad 1900, LLC*, 604 F. Supp. 3d at 978-79.  Judicial economy will not be served by the Court's exercise of supplemental jurisdiction because the clams "have not been the subject of any significant litigation in this case." *See id.* at 979.  Similarly, convenience and fairness do not weigh in favor of the Court's exercise of supplemental jurisdiction because the Los Angeles Superior Court is equally convenient for the parties and will provide an equally fair resolution of the issues.  *See id.*  Finally, "comity strongly weighs in favor of declining to exercise supplemental jurisdiction" because the Los Angeles Superior Court is "fully competent" to adjudicate Plaintiff's state law claims.  *See id.*  Indeed, the U.S. Supreme Court has recognized that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims," as they do here. *See Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.

RULE 12(b)(1) MOTION TO DISMISS ACTION

### D. Plaintiff Should Not Be Allowed Another Attempt to Allege Standing

As established by the notarized affidavit signed by Plaintiff, this case is about Defendants' failure to enforce the laws against homeless people on or around Plaintiff's properties. *See supra* § II.B.  Plaintiff does not have Article III standing to assert claims against Defendants based on their failure to enforce laws against others.  In apparent recognition that this rule is fatal to his action, Plaintiff attempted to plead around it by playing fast and loose with the truth, defining purported policies by Defendants to achieve exactly what Plaintiff complains about—the presence of homeless encampments around his properties—without having ***any facts*** that such policies exist.  Plaintiff then mechanically substituted his defined term "Defendants' Relocation Polices" into dozens and dozens of allegations in his complaint.  Still, Plaintiff cannot plausibly allege Article III standing to assert claims against Defendants for the alleged injuries caused by homeless people on or around his properties.

Plaintiff should not be given another attempt to allege standing.  The defects are incurable because Plaintiff lacks Article III standing to assert claims against Defendants for crimes committed by third parties.  In addition, Plaintiff has already had a second attempt to allege standing, and he introduced allegations without any factual support that are completely divorced from the truth.  Under these circumstance, denial of leave to amend is proper.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990) (noting that leave to amend is determined by the five factors of bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether plaintiff has previously amended his complaint, and affirming denial of leave to amend because amendment would be futile and plaintiff had previously amended the complaint); *see also Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 824 (9th Cir. 2002) (affirming denial of leave to amend because the plaintiff "could not have possibly amended his complaint to allege an injury in fact" for standing).

RULE 12(b)(1) MOTION TO DISMISS ACTION

## II.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action for lack of subject matter jurisdiction.


Dated: October 21, 2024      HYDEE FELDSTEIN SOTO, City Attorney
                             DENISE C. MILLS, Chief Deputy City Attorney
                             KATHLEEN KENEALY, Chief Assistant City Attorney
                             MOLLY STEPHENS, Deputy City Attorney
                             EMERSON KIM, Deputy City Attorney

                             By:   /s/ Molly Stephens
                                   Molly Stephens
                                   Deputy City Attorney
                                   Attorneys for Defendants

RULE 12(b)(1) MOTION TO DISMISS ACTION