HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
MOLLY STEPHENS. Deputy City Attorney (SBN 232211)
EMERSON KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone:  213-978-1868/213-526-7336
Facsimile:   213-978-7011
Email:  molly.stephens@lacity.org
Email:  emerson.kim@lacity.org

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOM RATNER-STAUBER;<br><br>                    Plaintiff,<br>       vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; LOS ANGELES POLICE DEPARTMENT.<br><br>                    Defendants. | Case No. 2:24-cv-07043-JLS-(SSCx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT UNDER FED. R. CIV. PROC. 12(b)(6)**<br><br><u>Hearing</u><br>Date:  November 22, 2024<br>Time:  10:30 a.m.<br>Courtroom 8A<br>Hon. Josephine L. Staton |

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE THAT** on November 22, 2024, at 10:30 a.m. in Courtroom 8A of the United States District Court for the Central District of California, located at the First Street U.S. Courthouse, 350 West 1st Street, Los Angeles, CA 90012, before the Honorable Josephine L. Staton, Defendants City of Los Angeles and the Los Angeles Police Department (collectively, "Defendants") will, and hereby do, move for an order dismissing the Amended Complaint, along with each and every claim asserted therein, by Plaintiff Adom Ratner-Stauber ("Plaintiff") under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff fails to state any claim for relief against Defendants.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the file and all pleadings in this matter, any oral argument, any additional matters upon which judicial notice may be taken, and any and all other matters this Court deems just and necessary.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on October 11, 2024.  This Motion is being filed concurrently with Defendants' Notice of Motion and Motion to Dismiss the Action pursuant to Federal Rule of Civil Procedure 12(b)(1), which makes a facial and factual challenge to this Court's subject matter jurisdiction.

Pursuant to Central District of California Local Rule 11-6.1, the attached Memorandum of Points and Authorities is less than 25 pages, excluding the caption, table of contents, table of authorities, and signature block.  The undersigned, counsel of record for Defendants, further certifies that the attached Memorandum of Points and Authorities contains 6,979 words, excluding the caption, table of contents, table of authorities, and signature block, in compliance with the word limit of Local Rule 11-6.1.

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

1    Dated: October 21, 2024    HYDEE FELDSTEIN SOTO, City Attorney
2                               DENISE C. MILLS, Chief Deputy City Attorney
                               KATHLEEN KENEALY, Chief Assistant City Attorney
3                               MOLLY STEPHENS, Deputy City Attorney
                               EMERSON KIM, Deputy City Attorney
4

5                               By:    /s/ Molly Stephens
                                      Molly Stephens
6                                     Deputy City Attorney
                                      Attorneys for Defendants
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................ 1

II.  RELEVANT BACKGROUND .......................................................... 2

III.  LEGAL STANDARD .................................................................... 5

IV.  LEGAL ARGUMENT ................................................................... 6

    A.  Plaintiff's Claims Under the U.S. Constitution Must Fail Because Plaintiff Does Not Allege Multiple Elements for *Monell* Liability .......................... 6

    B.  Even if Plaintiff Could Allege *Monell* Liability, His Claims for Violations of the U.S. Constitution Fail for Other Reasons ........................................ 9

        1.  There Was No Violation of the Takings Clause Under the Fifth Amendment…………………………………………………….. 9

        2.  There Was No Violation of the Equal Protection Clause Under the Fourteenth Amendment…………………………………………….. 11

        3.  Plaintiff Does Not State a State-Created Danger Claim…………. 13

    C.  If the Court Were to Exercise Jurisdiction Over the State Law Claims, Plaintiff Does Not and Cannot State a Claim Under California Law ....... 15

        1.  Defendants Have Sovereign Immunity From Liability for the State Law Claims…………………………………………………………15

        2.  Plaintiff's Public and Private Nuisance Claims Fail for Multiple Reasons…………………………………………………………….. 17

            a.  Plaintiff Did Not Properly Present His Nuisance Claims Pursuant to the Government Code…………………………17

            b.  Any Conduct by Defendants Did Not Proximately Cause Plaintiff's Damages as a Matter of Law…………………...18

i

3.    Plaintiff's Inverse Condemnation Claim Fails for Multiple

Reasons……………………………………………………... 19

a.    The Claim Must Be Dismissed for the Same Reasons as

Plaintiff's Fifth Amendment Claim………………………..19

b.    Under Governing California Supreme Court Authority,

Section 19 Does Not Apply to the Exercise of Police

Powers……………………………………………….. 19

V.    CONCLUSION ....................................................................................21

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................5

*Benavidez v. County of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ..................................................................6

*Bottini v. City of San Diego*,
   27 Cal. App. 5th 281 (2018) ...................................................................19

*Customer Co. v. City of Sacramento*,
   10 Cal. 4th 368 (1995) ......................................................................20, 21

*DeShaney v. Winnebago County Dept. of Social Servs.*,
   489 U.S. 189 (1989).................................................................................14

*Doe v. United States*,
   419 F.3d 1058 (9th Cir. 2005) ..................................................................5

*Donohue v. State of Cal.*,
   178 Cal. App. 3d 795 (1986) .............................................................17, 18

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir.2011) .....................................................................6

*Herd v. County of San Bernardino*,
   311 F. Supp. 3d 1157 (C.D. Cal. 2018) ...................................................7

*Hernandez v. City of Pico Rivera*,
   2020 WL 4529890 (C.D. Cal. July 30, 2020)..........................................9

*Hounsell v. Los Angeles City Attorney*,
   2015 WL 13919068 (C.D. Cal. Nov. 23, 2015) ................................12, 13

*Huffman v. County of Los Angeles*,
   147 F.3d 1054 (9th Cir. 1998) ...........................................................14, 15

iii

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

*In re Firearm Cases*,
   126 Cal. App. 4th 959 (2005) ...................................................................... 18

*In re Gilead Sciences Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................... 5

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005) ....................................................................... 9, 10, 11

*Lucas v. S. Carolina Coastal Council*,
   505 U.S. 1003 (1992) ................................................................................ 10

*Martinez v. Pacific Bell*,
   225 Cal. App. 3d 1557 (1990) ................................................................... 18

*Mikkelsen v. State of Cal.*,
   59 Cal. App. 3d 621 (1976) ....................................................................... 16

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978) .................................................................................... 6

*Morris v. City of Los Angeles*,
   2023 WL 6157306 (C.D. Cal. July 26, 2023) ............................................. 7

*Mullis v. U.S. Bankr. Court*,
   828 F.2d 1385 (9th Cir. 1987) .................................................................... 5

*Nelson v. State of Cal.*,
   139 Cal. App. 3d 72 (1982) ................................................................. 17, 18

*Pac. Bell v. City of San Diego*,
   81 Cal. App. 4th 596 (2000) ..................................................................... 16

*Pena v. City of Los Angeles*,
   2024 WL 1600319 (C.D. Cal. Mar. 25, 2024) ...................................... 9, 10

*Penn. Coal Co. v. Mahon*,
   260 U.S. 393 (1922) ................................................................................. 10

*Penn Central Transportation Company v. City of New York*,
   438 U.S. 104 (1978) ................................................................................. 10

*Railroad 1900, LLC v. City of Sacramento*,
   604 F. Supp. 3d 968 (E.D. Cal. 2022) ........................... 2, 11, 12, 13, 14

iv

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

*Roseville Cmty. Hosp. v. State of Cal.,*
    74 Cal. App. 3d 583 (1977) ...................................................................16

*San Remo Hotel L.P. v. City And County of San Francisco,*
    27 Cal. 4th 643 (2002) .......................................................................19

*Schonbrun v. SNAP, Inc.,*
    2022 WL 2903118 (C.D. Cal. Mar. 15, 2022)....................................18

*Schooler v. State of Cal.,*
    85 Cal. App. 4th 1004 (2000) ...........................................................16

*Sinclair v. City of Seattle,*
    61 F.4th 674 (9th Cir. 2023) .............................................................14

*SmileDirectClub, LLC v. Tippins,*
    31 F.4th 1110 (9th Cir. 2022) ...........................................................12

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ............................................................5

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
    535 U.S. 302 (2002)............................................................................9

*Van Ort v. Estate of Stanewich,*
    92 F.3d 831 (9th Cir. 1996) .............................................................7, 8

**Statutes**

42 U.S.C. § 1983 .........................................................................1, 4, 6

Cal. Constit., Art. I, §19 ...............................................1, 5, 16, 19, 20

Cal. Gov. Code § 814 .........................................................................16

Cal. Gov. Code § 818.2 ......................................................................15

Cal. Gov. Code § 820.2 ......................................................................16

Cal. Gov. Code § 821 .........................................................................15

Cal. Gov. Code § 845 .........................................................................15

Cal. Gov. Code § 905 .........................................................................17

Cal. Gov. Code § 910 .........................................................................17

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

Cal. Gov. Code § 945.4 ................................................................................................17

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

## I.    INTRODUCTION

In this action, Plaintiff Adom Ratner-Stauber ("Plaintiff") seeks to hold Defendants City of Los Angeles and the Los Angeles Police Department (collectively, "Defendants") liable for injuries caused by homeless people committing crimes on or near his properties.   Although Plaintiff previously asserted claims based solely on Defendants' alleged failure to enforce laws against these homeless people, his Amended Complaint ("AC") now alleges that Defendants physically relocate homeless people from public areas or "more favored" neighborhoods to areas on or near his properties. Plaintiff asserts federal claims against Defendants pursuant to 42 U.S.C. section 1983 for violations of the Takings Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the state-created danger doctrine of the Fourteenth Amendment.  Plaintiff also asserts three California state law claims for public and private nuisance and inverse condemnation under Article I, section 19 of the California Constitution.

Plaintiff fails to state any federal claim.  As a threshold matter, all of Plaintiff's claims for violations of the U.S. Constitution against these two municipal entities must fail because Plaintiff does not plausibly allege three required elements for liability pursuant to 42 U.S.C. section 1983.  Specifically, Plaintiff fails to allege that Defendants have a policy of relocating homeless people to other parts of the city (or even a policy of nonenforcement of laws), that the policy amounts to deliberate indifference to Plaintiff's constitutional rights, or that the policy was the moving force behind the alleged constitutional violations, which arise from the actions of homeless people.

Although Plaintiff's failure to allege liability pursuant to 42 U.S.C. section 1983 is fatal to all of his claims under the U.S. Constitution, the claims also fail for other reasons.  Plaintiff's claim under the Fifth Amendment must fail because Defendants' alleged relocation of homeless people and nonenforcement of laws do not constitute either a physical or regulatory taking for purposes of the Takings Clause.  Plaintiff's equal protection claim must fail because Plaintiff merely repeats the elements of a claim

1

for differential treatment without identifying similarly situated property owners who have received more favorable treatment or facts that he has intentionally been treated differently without any rational basis.  Indeed, as the Eastern District of California recently held, there is no authority "establishing that cities are required, as a matter of equal protection law, to treat all areas of the city alike." *Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 978 (E.D. Cal. 2022).  Plaintiff's state-created danger claim must fail because Plaintiff comes nowhere close to alleging that Defendants affirmatively placed him in danger by acting with deliberate indifference to a known or obvious danger.

Although the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims without Plaintiff having viable federal claims, if the Court were to reach the merits of those claims, Plaintiff also fails to state any claim under California state law.  The California Government Code establishes multiple specific immunities that bar Plaintiff from asserting claims against Defendants for their failure to enforce laws against others or discretionary acts to relocate homeless people to different areas of the city.  Plaintiff has not satisfied Government Code second 910 to maintain his nuisance claims based on Defendants affirmatively relocating homeless people to different parts of the city.  Even if he had, however, Plaintiff does not, and cannot, allege the causation element for his nuisance claims because homeless people—not Defendants—were the proximate cause of his alleged injuries.  Plaintiff's inverse condemnation claim fails not only for the same reasons as his Fifth Amendment claim, but also because the California Supreme Court has explicitly held that the exercise of police powers unrelated to public improvements or public works, which is at issue here, cannot give rise to an inverse condemnation claim.

Plaintiff's claims must be dismissed for failure to state a claim.

## II.  RELEVANT BACKGROUND

As set forth in more detail in the concurrently filed Motion to Dismiss Action pursuant to Federal Rule of Civil Procedure 12(b)(1) (the "Rule 12(b)(1) Motion"),

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff alleges that he has been injured by homeless people camping on or near nine groups of properties in the City of Los Angeles that he indirectly owns and/or manages. *See* Rule 12(b)(1) Motion § II.A. These homeless people allegedly commit crimes, such as theft, trespass, drug use, and obstructing the right of way, that allegedly have harmed Plaintiff's properties, have forced Plaintiff to incur costs, and have created "life threatening conditions." *See id.* Plaintiff seeks to hold Defendants liable for the injuries inflicted by the homeless people around his properties. *See id.* §§ II.B, II.C.

Although Plaintiff's original complaint addressed the alleged failure by Defendants to enforce the laws, Plaintiff changes the theory of his case in his AC. *See id.* Plaintiff now alleges that Defendants are liable for the injuries inflicted by homeless people around his properties not only because Defendants "have a policy to not enforce . . . laws in certain areas of the City," but also because Defendants "physically relocate the homeless to and around private property." AC (ECF No. 15) ¶ 17. The AC includes only a handful of high-level allegations about nonenforcement. *See id.* ¶¶ 1 (asserting "an illegal and abject failure to enforce laws"), 4 (alleging that this case is not "simply about . . . failing to enforce the law"), 17, 27 (asserting a "refusal to enforce the law at and around Plaintiff's property and the property of those similarly situated").

Instead, the AC focuses on the purported relocation policies. Plaintiff alleges that Defendants have "policies, procedures, and conduct of moving homeless encampments from public property situated in one neighborhood to another neighborhood, . . . with the intentional, knowing, and/or reckless purpose to move the homeless from public view on public property to less visible locations on or near private property." *Id.* ¶ 19. Plaintiff also alleges that Defendants have "policies, procedures, and conduct of moving homeless encampments from and around private property situated in one more favored neighborhood (*i.e.*, more affluent neighborhoods and thus angering homeowners with more political influence with Defendants) to another neighborhood, . . . with the intentional, knowing, and/or reckless purpose to move the homeless from the more favored neighborhood to the less favored locations on or near private property." *Id.* ¶

3

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

21.   Plaintiff collectively defines these two alleged types of relocation actions as "Defendants' Relocation Actions." *Id.*

As set forth in more detail in the concurrently filed Rule 12(b)(1) Motion, Plaintiff alleges virtually no details about the relocation policies, such as how and when they were officially adopted by Defendants, how many times they have been used and in what locations, or when they have been used to move homeless people on or near Plaintiff's property. *See* Rule 12(b)(1) Motion § II.C.

Plaintiff asserts three claims for violations of the U.S. Constitution pursuant to 42 U.S.C. section 1983:

- <u>Takings Clause of the Fifth Amendment</u>:  Plaintiff alleges that Defendants have violated the Takings Clause because their "Relocation Actions" have created "Lawless Zones" that have "materially and substantially blocked and/or impaired access to Plaintiff's property," and because the "Relocation Actions" have "regulated" Plaintiff's property, "creating catastrophic economic harm to the value of the property." AC (ECF No. 15) ¶¶ 165-168.

- <u>Equal Protection Clause of the Fourteenth Amendment</u>:  Plaintiff alleges that Defendants have violated the Equal Protection Clause because they have "arbitrarily determined which private properties would benefit and which would suffer substantial harm from Defendants' Relocation Actions." *Id.* ¶ 172.

- <u>State-Created Danger Doctrine Under the Fourteenth Amendment</u>: Plaintiff alleges that Defendants have violated the state-created danger doctrine because their "Relocation Actions" have created "Lawless Zones, with the accompanying crime and threats to Plaintiff's health and life," which "have effectively provided Plaintiff with a Hobson's choice: either suffer the threats of violence and criminal assaults of the occupants of the Lawless Zones or abandon property ownership in the City of Los Angeles by selling his properties at values that have now been materially and substantially diminished." *Id.* ¶ 175.

Plaintiff also asserts three claims under California state law for public and private

4

nuisance and inverse condemnation. *Id.* ¶¶ 176-193. Plaintiff alleges that Defendants' "Relocation Actions" have created "Lawless Zones" and "harmful conditions" that constitute public and private nuisances actionable under the California Civil Code. *Id.* ¶¶ 176-189. Plaintiff also alleges that Defendants' "Relocation Actions" "allow a public use on or near [his] properties" and amount to a "regulatory taking." *Id.* ¶¶ 192-193.

As relief, Plaintiff seeks declarations that Defendants have violated the U.S. and California Constitutions, damages, and a "permanent injunction ordering Defendants to enforce all applicable laws in a way to abate the nuisance." *Id.* ¶ 9, Prayer for Relief.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, allegations "must be enough to raise a right to relief above the speculative level," giving the opposing party fair notice and an ability to defend itself effectively. *Id.*; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In considering a motion to dismiss, although a court "must construe the complaint in the light most favorable to the plaintiff, taking all [his] allegations as true and drawing all reasonable inferences . . . in [his] favor," it is not required to accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). A court also is not required to accept allegations that contradict facts that may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

## IV.    LEGAL ARGUMENT

### A.    Plaintiff's Claims Under the U.S. Constitution Must Fail Because Plaintiff Does Not Allege Multiple Elements for *Monell* Liability

Plaintiff asserts his claims against Defendants under the U.S. Constitution pursuant to 42 U.S.C. section 1983.  AC (ECF No. 15) ¶ 6.  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom."  *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  To allege *Monell* liability, Plaintiff must allege, "(1) that [he] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and punctuation omitted).  Plaintiff's claims under the U.S. Constitution all fail because Plaintiff fails to allege three separate elements for *Monell* liability.

First, Plaintiff does not plausibly allege that Defendants had a policy.  As set forth in more detail in the concurrently filed Rule 12(b)(1) Motion, Plaintiff has only conclusory allegations that Defendants have policies to conduct the relocations he complains of elsewhere in the AC, which is insufficient to allege the existence of a policy.  *See* Rule 12(b)(1) Motion § IV.A.1(a).

Because the AC focuses on Defendants' purported relocation polices, the allegations about a policy of nonenforcement are even more sparse, amounting to a single assertion that Defendants "have a policy to not enforce [the Los Angeles Municipal Code, California Civil Code, and other laws to protect the health and safety of Los Angeles residents] in certain areas of the City."  AC (ECF No. 15) ¶ 17.  Plaintiff does not allege, for example, the source of the policy, how and when it was officially adopted by Defendants, or even a description of the areas in which Defendants refuse to enforce laws.  Just because officers called to a scene exercise their discretion not to make

an arrest does not mean a policy of nonenforcement exists.  Indeed, Plaintiff's only allegation that officers acted pursuant to a policy is when officers "would not remove or arrest [a] woman for assault."  *Id.* ¶ 111.  This single example, in which officers could have been following any one of countless different policies governing arrests, and Plaintiff's conclusory assertion that Defendants have a policy of nonenforcement of laws in certain unidentified areas of the city are insufficient to allege the existence of a policy.  *See Morris v. City of Los Angeles*, 2023 WL 6157306, at *3-4 (C.D. Cal. July 26, 2023) (one-time incident and conclusory assertion of a policy are insufficient to allege the existence of a policy).

Second, Plaintiff does not plausibly allege that the relocation or nonenforcement polices amount to deliberate indifference to his constitutional rights.  The only allegations that even come close to deliberate indifference are three allegations that Defendants "intentionally, knowingly and/or recklessly created dangerous life-threatening conditions for Plaintiff," had policies "with the intentional, knowing, and/or reckless purpose to move the homeless from public view on public property to less visible locations on or near private property," and had policies "with the intentional, knowing, and/or reckless purpose to move the homeless from the more favored neighborhood to the less favored locations on or near private property."  AC (ECF No. 15) ¶¶ 1, 19, 21.  Not only do these allegations fail to identify any constitutional rights the Defendants ignored, but they are also entirely conclusory.  Such conclusory allegations are insufficient to allege *Monell* liability.  *See Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) ("Merely alleging that 'Defendants acted with deliberate indifference' is conclusory and does not show that the alleged deficiencies were 'obvious and the constitutional injury was likely to occur.'").

Third, Plaintiff does not plausibly allege that Defendants' policies were the moving force behind the constitutional violations.  This causation requirement is much more stringent than the causation requirement for standing.  *See* Rule 12(b)(1) Motion § IV.A (describing causation requirement for standing).  To be a moving force, a policy

7

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

"must be the proximate cause of the injuries suffered." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). "Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*." *Id.*

Because Plaintiff does not plausibly allege that the purported relocation policies and nonenforcement policy caused his injuries for purposes of standing, as set forth in detail in the concurrently filed Rule 12(b)(1) Motion, his allegations certainly do not satisfy the more stringent causation requirement for *Monell* liability. *See* Rule 12(b)(1) Motion § IV.A. Indeed, as Plaintiff's allegations make clear, his injures arise from the crimes committed by homeless people around his properties, who are the proximate cause of his injuries. *See supra* § II.

Although Plaintiff alleges that "Defendants knew or should have known that moving these homeless . . . and allowing them to encamp on or near Plaintiff's property would result in trespass, arson, theft, physical threats to Plaintiff and his tenants, and other harms," this conclusory allegation is not enough for proximate causation. *See* AC (ECF No. 15) ¶ 20. There are no facts alleged that Defendants knew or should have known any particular person would commit a crime against Plaintiff. Even if Plaintiff could allege that Defendants had some knowledge about a homeless person's prior criminal history, which he fails to do, that would still not be enough to allege that Defendants' policies proximately caused a particular crime. *See Van Ort*, 92 F.3d at 837 (county's knowledge of officer's prior use of illegal force did not show, as a matter of law, that county could have foreseen officer committing a violent attack against the plaintiffs to establish that the county's policy proximately caused the plaintiff's injuries). A homeless person's independent acts of committing a crime are the proximate cause of Plaintiff's injuries—not any policy by Defendants. *See id.*

Plaintiff's failure to allege three separate elements for *Monell* liability is fatal to all of his claims for violations of the U.S. Constitution.

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

**B.    Even if Plaintiff Could Allege *Monell* Liability, His Claims for Violations of the U.S. Constitution Fail for Other Reasons**

Although Plaintiff's failure to allege *Monell* liability is fatal to his claims under the U.S. Constitution, the claims also fail for additional reasons.

**1.    There Was No Violation of the Takings Clause Under the Fifth Amendment**

The Takings Clause of the Fifth Amendment "provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).  There are two types of takings that may give rise to a claim under the Fifth Amendment:  a physical taking and a regulatory taking.  *Hernandez v. City of Pico Rivera*, 2020 WL 4529890, at *5 (C.D. Cal. July 30, 2020) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-22 (2002)).  Neither type of taking has occurred in this case.

A physical taking requires "direct government appropriation or physical invasion of private property" for public use.  *Lingle*, 544 U.S. at 537; *Hernandez*, 2020 WL 4529890, at *5.  Here, there has been no direct appropriation or physical invasion of Plaintiff's property by Defendants for a public use.  There are no allegations that Defendants have appropriated any of Plaintiff's properties to use as public encampments for homeless people.  As Plaintiff alleges, homeless people trespass on his property.  *See, e.g.*, AC (ECF No. 15) ¶¶ 39, 60, 73-74, 84-85, 87, 95-96, 105, 109-111, 114, 124, 134, 147, 165.  Defendants' alleged failure to enforce trespassing laws against these homeless people is not an affirmative action by the government and cannot constitute a direct appropriation or physical invasion of property by Defendants.  *Cf. Pena v. City of Los Angeles*, 2024 WL 1600319, at *5 (C.D. Cal. Mar. 25, 2024) ("[T]he weight of authority indicates that claims based on damages caused by the government's exercise of police power in the course of enforcing criminal laws does not provide a basis for a taking claim under the Fifth Amendment.").

A regulatory taking requires a "government regulation of private property

9

. . . so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle* 544 U.S. at 537.  In other words, although private property may be regulated to some extent, "'if regulation goes too far it will be recognized as a taking.'" *Id.* (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).  Here, there has been no regulation by Defendants of Plaintiff's property.  Instead, Plaintiff complains about Defendants' alleged relocation of homeless people or failure to enforce laws against homeless people as part of Defendants' exercise of police powers.  *See supra* § II.  An exercise of police power does not constitute a taking under the Fifth Amendment.  *See Pena*, 2024 WL 1600319, at *5.

Moreover, even if there were a regulation at issue, Plaintiff does not allege facts showing a deprivation of a property interest to the degree that the law requires to establish a regulatory taking.  For a *per se* regulatory taking, Plaintiff must allege that a regulation "completely deprive[d]" him of "'*all* economically beneficial us[e]'" of his property.  *Lingle*, 544 U.S. at 538 (quoting *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992) (emphasis in original)).  For other regulatory takings that do not fall within the *per se* rule, they are governed by the guidelines set forth in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 124 (1978).  Those guidelines consider the economic impact of the regulation on the plaintiff, including the extent to which the regulation has interfered with the plaintiff's reasonable investment-backed expectations, and the character of the government action.  *Id.*  The purpose of the *Penn Central* guidelines is to "identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain."  *Lingle*, 544 U.S. at 539.

Plaintiff does not come close to alleging the deprivation required for a regulatory taking.  As in *Penn Central*, where the U.S. Supreme Court held there was no regulatory taking, Plaintiff can still use his properties as they were intended—to lease for industrial, commercial, or residential purposes.  *See Penn Cent. Transp. Co.*, 438 U.S. at 136, 138.  In a single paragraph at the beginning of the AC, Plaintiff alleges that "in some

10

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

instances," his property has been rendered "entirely unfit for its intended and legal use." AC (ECF No. 15) ¶ 18. But the Court need not accept this conclusory allegation, which is contradicted by the more specific allegations in the AC. *See supra* § III. As the specific allegations show, Plaintiff has lost only one tenant at an industrial property, has had another tenant at another industrial property "downsize," and has had another tenant at a commercial property reduce store hours at night. AC (ECF No. 15) ¶¶ 41, 63, 87.

In an apparent effort to suggest that one of his residential properties is not fit for its intended use, Plaintiff plays fast and loose with truth. Plaintiff alleges that he was forced to demolish the structure on the property because of homeless people, but omits the facts in his original complaint and sworn affidavit that he always planned to demolish the structure. *Compare id.* ¶ 108 (alleging that Plaintiff was forced to demolish the structure), *with* Compl. (ECF No. 1) ¶ 99, *and* Request for Judicial Notice, filed concurrently herewith ("RJN"), Ex. A (Affidavit) ¶ 77 (both admitting that Plaintiff demolished the structure "earlier than planned"). In any event, as Plaintiff alleges, Plaintiff can still redevelop the property for its intended residential use. AC (ECF No. 15) ¶¶ 101, 118. That Plaintiff has delayed any redevelopment plans in response to homeless encampments does not mean that the government has taken his property for purposes of the Fifth Amendment. *See Lingle*, 544 U.S. at 539

### 2. There Was No Violation of the Equal Protection Clause Under the Fourteenth Amendment

Plaintiff has no viable equal protection theory. In his original complaint, Plaintiff relied on selective enforcement for an equal protection claim, alleging that Defendants selectively enforced laws against homeless people in some areas of the city but not in others. Compl. (ECF No. 1) ¶ 162. Defendants established in their original motion to dismiss that Plaintiff cannot assert a selective enforcement claim because he is not a member of any of the homeless groups allegedly subject to selective enforcement of the laws. *See, e.g.*, *Railroad 1900*, 604 F. Supp. 3d at 977-78 ("[P]laintiff . . . has identified no authority establishing that it may bring a selective enforcement claim without alleging

that it has itself been the subject of the challenged enforcement.").

In apparent recognition that selective enforcement does not apply to this action, Plaintiff changes his equal protection theory in the AC to a differential treatment theory, typically referred to as a "class-of-one" theory. Plaintiff alleges that by moving homeless people from one part of the city to another, Defendants have "placed a disproportionate burden on some people, property owners, and businesses, such as Plaintiff and those similarly situated, over other property owners' properties that are similar and comparable to Plaintiffs' [*sic*] properties." AC (ECF No. 15) ¶ 172. That theory does not apply here either.

"To plead a class-of-one equal protection claim, [Plaintiff] must allege facts showing that [he] [has] been [1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122-23 (9th Cir. 2022). To allege intentional treatment, Plaintiff must allege that the differential treatment was "intentionally directed just at him, as opposed to being an accident or a random act." *Hounsell v. Los Angeles City Attorney*, 2015 WL 13919068, at *6 (C.D. Cal. Nov. 23, 2015). To allege differential treatment, Plaintiff must identify a comparator who received different treatment and allege that he is "similarly situated to the proposed comparator in all material respects." *See id.* at *7; *SmileDirectClub*, 31 F.4th at 1123.

Here, Plaintiff merely repeats the elements of the claim, which is insufficient. *See supra* § III; AC (ECF No. 15) ¶¶ 18, 19, 21, 172-173. For example, other than conclusory allegations that Defendants have an intentional purpose of moving homeless people from public property to private property or from "more favored" neighborhoods to "less favored locations," Plaintiff does not allege facts that Defendants intentionally treated him differently. AC (ECF No. 15) ¶¶ 19, 21. In fact, there are no facts at all that Defendants intentionally directed any actions toward Plaintiff or his properties. Plaintiff cannot identify a single time that Defendants moved homeless people on or near his properties.

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

In addition, other than a conclusory allegation that Plaintiff's properties "are similar and comparable" to other properties from which homeless people were moved, Plaintiff has no facts identifying the comparable properties, why they are comparable, or when homeless people were moved from those properties to his property. *See id.* ¶¶ 18, 172.

Moreover, because Plaintiff identifies no comparable properties or situations of when the properties were treated differently, he has no allegations explaining why there was no rational basis for the difference in treatment. *See id.* ¶¶ 21, 173. In fact, Plaintiff has only two allegations regarding a rational basis: one assertion that Defendants favor unidentified neighborhoods with "political influence predicated on affluence" and another entirely conclusory allegation that Defendants have "no rational basis" for their "Relocation Actions." *See id.* Plaintiff's allegations devoid of facts are insufficient to state a claim. *See Hounsell*, 2015 WL 13919068, at *7-8 (affirming dismissal of equal protection claim where, unlike here, the plaintiff identified comparators, but failed to allege facts to show that any of the comparators were similarly situated or that there was no rational basis for the disparate treatment).

Ultimately, as the Eastern District of California recognized, there is no authority "establishing that cities are required, as a matter of equal protection law, to treat all areas of the city alike." *Railroad 1900*, 604 F. Supp. 3d at 978. The equal protection claim must fail.

### 3.    Plaintiff Does Not State a State-Created Danger Claim

In his AC, Plaintiff adds a state-created danger claim based on a single paragraph that Defendants' alleged affirmative "Relocation Actions" "have effectively provided Plaintiff with a Hobson's choice" to "either suffer the threats of violence and criminal assaults" by homeless people or "abandon property ownership in the City of Los Angeles by selling his properties at [reduced] values." AC (ECF No. 15) ¶ 175. Plaintiff comes nowhere close to stating a state-created danger claim.

Generally, a state actor is not constitutionally required to protect a person from

13

private actors, such as the homeless people who Plaintiff complains about in this action.
*See DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195-97 (1989).
The state-created danger doctrine is a limited exception to this rule, under which state
actors may be held liable if they ***affirmatively*** place a plaintiff in danger by acting with
***deliberate indifference*** to a ***known or obvious danger***. *See Sinclair v. City of Seattle*,
61 F.4th 674, 680 (9th Cir. 2023). "[A] plaintiff must establish that (1) a state actor's
affirmative actions created or exposed him to 'an actual, particularized danger [that he]
would not otherwise have faced,' (2) that the injury he suffered was foreseeable, and (3)
that the state actor was deliberately indifferent to the known danger." *Id.* The deliberate
indifference standard is a "stringent standard of fault," in which "a state actor needs to
know that something is going to happen but ignore the risk and expose the plaintiff to
it." *Id.* at 680-81 (internal quotations omitted). "The danger-creation exception to
*DeShaney* does not create a broad rule that makes state officials liable under the
Fourteenth Amendment whenever they increase the risk of some harm to members of
the public." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998).

     As an initial matter, Plaintiff has not suffered the types of injuries that the state-
created danger doctrine is meant to address. As the Eastern District of California
recognized when rejecting a state-created danger claim in a substantially similar case
complaining about homeless people in the areas surrounding the plaintiff's properties,
the state-created danger doctrine, as applied in the Ninth Circuit, "involve[s] risks of
bodily harm to individuals." *Railroad 1900*, 604 F. Supp. 3d at 976. Here, although
Plaintiff repeats the hyperbolic assertion that the actions of homeless people are "life-
threatening," he has no facts to support the assertion. *See* AC (ECF No. 15) ¶¶ 1, 3, 5,
22, 24, 29. For example, Plaintiff alleges no facts that he ever suffered bodily injury—
or even the risk of bodily injury. Indeed, he has only two allegations regarding threats
by homeless people—one involving a threat to law enforcement officers, and the other
involving threats to the vehicles of tenants. *Id.* ¶¶ 111, 137.

     In addition, Plaintiff fails to meet multiple other elements needed to state a claim.

Among other things, Plaintiff fails to allege that Defendants' affirmative actions created or exposed him to an actual, particularized danger and that Defendants knew of this danger but ignored the risk. The only affirmative action by Defendants that Plaintiff alleges are the purported "Relocation Actions," but Plaintiff alleges no facts that Defendants relocated any homeless people to his properties who ended up committing crimes against him. Plaintiff also alleges no facts that Defendants knew any particular homeless person they allegedly relocated would commit a specific crime against Plaintiff and that Defendants relocated the person anyway. A general knowledge of a risk of homeless people committing crimes is insufficient. *See Huffman*, 147 F.3d at 1059-60 (as a matter of law, county could not foresee the private acts of an off-duty officer discharging his gun, even though county required off-duty officers to carry a gun and knew of 80 instances in which off-duty officers discharged or brandished their guns).

The state-created danger doctrine simply does not apply to this case.

## C.    If the Court Were to Exercise Jurisdiction Over the State Law Claims, Plaintiff Does Not and Cannot State a Claim Under California Law

Although the Court should not exercise jurisdiction over Plaintiff's state law claims without a viable federal claim (*see* Rule 12(b)(1) Motion § IV.C), if the Court were to consider Plaintiff's state law claims for public and private nuisance and inverse condemnation under Article I, section 19 of the California Constitution, these claims fail for multiple different reasons.

### 1.    Defendants Have Sovereign Immunity From Liability for the State Law Claims

As Defendants established in their motion to dismiss the original complaint, multiple different sovereign immunity provisions protect them from liability for failing to enforce laws against homeless people, including immunities for "failing to enforce any law," "fail[ing] to provide sufficient police protection," and "fail[ing] to make an arrest." *See, e.g.*, Cal. Gov. Code §§ 818.2, 821, 845. These provisions bar Plaintiff's state law claims to the extent they are based on Defendants' failure to enforce the laws.

*See* AC (ECF No. 15) ¶¶ 1, 4, 17, 27.

In apparent recognition that Defendants are immune from claims based on nonenforcement of the laws, the new theory in Plaintiff's AC is that Defendants relocate homeless people to different areas of the city.  *See supra* § II.  But Defendants are still immune from liability for any alleged actions of moving homeless people from one area of the city to another because any such acts would have been the result of an exercise of discretion.  *See* Cal. Gov. Code § 820.2 (public employee is not liable for an injury resulting a discretionary act or omission, "whether or not such discretion be abused"), § 815.2(b) (public entity is not liable where the public employee is immune).

As Plaintiff stated during the conference of counsel pursuant to Local Rule 7-3, a "Relocation Action" may include actions by Defendants to clear an encampment in one part of the city, knowing homeless people will go to another area.  The law is clear, however, that "[a] decision to devote available facilities and personnel to selected areas and to abstain from active pursuit of others is a policy or planning decision" involving discretion and subject to immunity.  *Roseville Cmty. Hosp. v. State of Cal.*, 74 Cal. App. 3d 583, 590 (1977).

These specific immunities require dismissal of Plaintiff's claims for public and private nuisance and inverse condemnation because they completely shield Defendants from liability.  *See, e.g.*, *Mikkelsen v. State of Cal.*, 59 Cal. App. 3d 621, 627-29 (1976) (nuisance); *Pac. Bell v. City of San Diego*, 81 Cal. App. 4th 596, 605-06 (2000) (inverse condemnation).  Moreover, the immunities shield Defendants from liability not only for damages, but also for injunctive relief seeking affirmative action that requires an expenditure of funds, as here.  *See, e.g.*, Cal. Gov. Code § 814; *Schooler v. State of Cal.*, 85 Cal. App. 4th 1004, 1013-14 (2000).

Defendants' immunity from liability for Plaintiff's state law claims is alone reason to dismiss the claims.

2.      **Plaintiff's Public and Private Nuisance Claims Fail for Multiple Reasons**

Even if the immunities under the California Government Code did not bar Plaintiff's nuisance claims, the claims still fail because Plaintiff's new theory of nuisance was not properly presented as a government claim pursuant to California Government Code section 910 and because Plaintiff does not, and cannot, allege the causation element required for his nuisance claims.

a.      **Plaintiff Did Not Properly Present His Nuisance Claims Pursuant to the Government Code**

The filing of a proper claim pursuant to California Government Code section 910 is a condition precedent to the maintenance of an action against these Defendants for damages caused by a public or private nuisance. *See* Cal. Gov. Code §§ 905, 910, 945.4. "[T]he factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint," and "the complaint is vulnerable to a [motion to dismiss] if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *Donohue v. State of Cal.*, 178 Cal. App. 3d 795, 802 (1986) (internal quotation marks omitted).

As Plaintiff alleges, he presented a claim to the City pursuant to California Government Code section 910 on June 20, 2024. *See* AC (ECF No. 15) ¶ 8; RJN, Ex. A (Claim & Affidavit). In that claim, Plaintiff's sole complaint was that Defendants "allow" homeless people to engage in illegal conduct around his properties by not enforcing the laws, even after Plaintiff contacts the City. *See* RJN, Ex. A (Affidavit) ¶¶ 7-12, 28-32, 34, 40-45, 51-57, 62-67, 74-75, 78-86, 91-96, 101-105, 107, 113-114, 116-119. In the AC, however, Plaintiff's nuisance claims are not based on Defendants' allegedly allowing illegal conduct through nonenforcement of the laws, but on affirmative "Relocation Actions." AC (ECF No. 15) ¶¶ 180-181, 185, 188. Because this is a new theory not presented in Plaintiff's government claim, Plaintiff's nuisance claims must be dismissed. *See Nelson v. State of Cal.*, 139 Cal. App. 3d 72, 79-81 (1982)

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

(affirming dismissal of litigation claims based on a failure to summon medical care when the prior government claim was based on different theory of medical malpractice); *see also Donohue*, 178 Cal. App. 3d at 803-04 (affirming dismissal of claims against the state because "[t]he act of permitting an uninsured motorist to take a driving test," alleged in the government claim, "is not the factual equivalent of the failure to control or direct the motorist in the course of his examination," alleged in the litigation).

### b. Any Conduct by Defendants Did Not Proximately Cause Plaintiff's Damages as a Matter of Law

Plaintiff's nuisance claims separately fail because Plaintiff does not, and cannot, allege the element of causation. *See In re Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005) (duty and causation are necessary elements of nuisance claims). The law is clear that liability for nuisance extends only to damage that is "proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others." *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 1565 (1990); *see also Schonbrun v. SNAP, Inc.*, 2022 WL 2903118, at *9 (C.D. Cal. Mar. 15, 2022). Proximate cause "becomes a question of law when the facts of the case permit only one reasonable conclusion." *Martinez*, 225 Cal. App. 3d at 1566 (internal quotation marks omitted); *see also Schonbrun*, 2022 WL 2903118, at *9.

As set forth in more detail above establishing that Defendants' alleged policies did not proximately cause the constitutional violations at issue, Defendants' alleged actions did not proximately cause his nuisance injuries. *See supra* § IV.A. The actions of homeless people—not Defendants' actions—were the proximate cause of Plaintiff's damages, and the nuisance claims must be dismissed. *See supra* § II; *Schonbrun*, 2022 WL 2903118, at *9 ("[I]t is evident that proximate cause is not satisfied because the injury Plaintiff suffered was caused by 'the independent intervening acts of others'— i.e., those in the homeless encampment.") (quoting *Martinez*).

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

### 3. Plaintiff's Inverse Condemnation Claim Fails for Multiple Reasons

Similarly, even if the immunities under the California Government Code did not bar Plaintiff's inverse condemnation claim under Article I, section 19 of the California Constitution, the claim still fails for multiple reasons, including that a government's exercise of police powers does not constitute a taking for purposes of section 19 under controlling California Supreme Court authority.

### a. The Claim Must Be Dismissed for the Same Reasons as Plaintiff's Fifth Amendment Claim

As an initial matter, the reasons that Plaintiff's takings claim under the Fifth Amendment of the U.S. Constitution must be dismissed require dismissal of Plaintiff's takings claim under section 19 of the California Constitution. Section 19 provides that private property may not be "taken or damaged for a public use" without just compensation. Cal. Const. Art. I, § 19. Although section 19, unlike the Fifth Amendment, includes both takings and damages, "the California Supreme Court has held that the takings clause in the California Constitution should be construed 'congruently' with the federal takings clause." *Bottini v. City of San Diego*, 27 Cal. App. 5th 281, 311 (2018) (quoting *San Remo Hotel L.P. v. City and County of San Francisco*, 27 Cal. 4th 643, 664 (2002)).

As with his Fifth Amendment takings claim, Plaintiff does not allege either a physical taking or an actionable regulatory taking. *See supra* § IV.B.1; *Bottini*, 27 Cal. App. 5th at 307-08 (applying the federal standard for a physical taking and regulatory taking to a takings claim under the California Constitution). Without a taking, Plaintiff's inverse condemnation claim must be dismissed.

### b. Under Governing California Supreme Court Authority, Section 19 Does Not Apply to the Exercise of Police Powers

If there were any doubt that Defendants' alleged "Relocation Actions" and failure to enforce laws against homeless people do not constitute takings compensable under

19

section 19 of the California Constitution, the California Supreme Court has addressed whether the exercise of police powers gives rise to an inverse condemnation claim and has explicitly held that it does not. *See, e.g.*, *Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 377-78 (1995).

In *Customer Company*, a plaintiff sued a city and county for damage to the plaintiff's store caused by officers in the course of apprehending a suspect who took refuge in the store. *Id.* As the California Supreme Court held, "[a]lthough the requirement of 'just compensation' has been extended, in limited circumstances . . . to encompass government regulations that constitute the functional equivalent of an exercise of eminent domain, section 19 . . . never has been applied to require a public entity to compensate a property owner for property damage resulting from the efforts of law enforcement officers to enforce the criminal laws." *Id.* at 377-78.

As the court explained, "[n]either the 'taken' nor the 'or damaged' language ever has been extended to apply outside the realm of eminent domain or public works to impose a Constitution-based liability . . . for property damage incidentally caused by the actions of public employees in the pursuit of their public duties." *Id.* at 378. Property damage that "bears no relation to a 'public improvement' or 'public work' of any kind . . . caused by actions of public employees having 'no relation to the function' of a public improvement whatsoever" does not give rise to a claim for inverse condemnation, but instead is "treated as subject to the general tort principles applicable to governmental entities." *Id.* at 383.

*Customer Company* controls in this case, which presents even clearer grounds for dismissal. Like in *Customer Company*, Plaintiff is asserting an inverse condemnation claim against Defendants based on decisions they took in the exercise of their police powers for the protection of the public health, safety, and welfare *See, e.g.*, AC (ECF No. 15) ¶ 17. Unlike in *Customer Company*, however, Defendants were *not* the ones to damage Plaintiff's property. If law enforcement officers cannot be liable for inverse condemnation for property damage they caused in the course of exercising their duties,

20

they certainly cannot be liable for inverse condemnation for property damage caused by third parties.  Moreover, actions (or failures to act) in the course of "protect[ing] the health and safety of Los Angeles residents," as Plaintiff alleges, bear no relation to public works or improvements, and plainly do not give rise to a claim for inverse condemnation. *See Customer Co.*, 10 Cal. 4th at 383.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint and all claims asserted therein.

Dated: October 21, 2024            HYDEE FELDSTEIN SOTO, City Attorney
                                   DENISE C. MILLS, Chief Deputy City Attorney
                                   KATHLEEN KENEALY, Chief Assistant City Attorney
                                   MOLLY STEPHENS, Deputy City Attorney
                                   EMERSON KIM, Deputy City Attorney

                                   By:   _/s/ Molly Stephens_____
                                         Molly Stephens
                                         Deputy City Attorney
                                         Attorneys for Defendants

RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT